JIMASON JACKSON *et al.*

*v.*

FRED W. KRAFT *et al.*

*Opinion filed October 19, 1900.*

1. TRUSTS—*resulting trust requires payment of the whole or some definite part of consideration.* To give rise to a resulting trust, the party for whose benefit it is claimed must have furnished the whole of the consideration or some definite part or share thereof.

2. SAME—*a promise to quit-claim does not give rise to a resulting trust.* A promise by a husband to his wife to quit-claim property to her or put the title to the property in her name does not create a resulting trust; nor does a promise to a third party to quit-claim to the wife's children have that effect.

3. HUSBAND AND WIFE—*when it is not presumed that wife intended to give money to husband.* If a husband receives the capital fund of his wife's property there is no presumption that she intended to give it to him.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. WILLIAM HARTZELL, Judge, presiding.

M. C. EARLY, C. NEUSTADT, and DEMPCY & WASHBURN, for plaintiffs in error:

Where one purchases land with the money of another and takes the title in his own name, a resulting trust arises. The law will raise a trust in favor of him with whose money the purchase was made. Perry on Trusts, sec. 126; *Coats* v. *Woodworth,* 13 Ill. 654; *Williams* v. *Brown,* 14 id. 202; *McDonald* v. *Stowe,* 109 id. 44; *VanBuskirk* v. *VanBuskirk,* 148 id. 18.

When the two facts, to-wit, payment of the purchase money by one and conveyance of the title thereby purchased to another, are found to exist, then the law so construes those two facts as to make them constitute a resulting trust, and for this reason such trust is said to arise by operation of law. *VanBuskirk* v. *VanBuskirk,* 148 Ill. 19; *Smith* v. *Smith,* 85 id. 189; *Donlin* v. *Bradley,* 119 id. 412.

While a parol agreement between the parties does not help the trust, neither does it prevent that implication of law from which the trust arises. The question of the ownership of the money may frequently be, and most generally is, proved, either in whole or in part, by establishing some contract between the parties, either in reference to the money or the purchase. *Williams* v. *Brown,* 14 Ill. 202.

If a party purchases land with trust funds and adds his own funds to the purchase money, a trust will result to the owner of the trust fund employed, and the burden will be upon the trustee to show the amount he has embarked in the enterprise. Bispham's Eq. sec. 86; Perry on Trusts, sec. 128; *Seaman* v. *Cook,* 14 Ill. 501; *Stephenson* v. *McClintock,* 141 id. 613; *School District* v. *Kirwin,* 25 id. 62; *Tyler* v. *Daniel,* 65 id. 318; *Ward* v. *Armstrong,* 84 id. 156.

Resulting trusts may be established by parol. *Donlin* v. *Bradley,* 119 Ill. 412; *VanBuskirk* v. *VanBuskirk,* 148 id. 19; 1 Perry on Trusts, sec. 137; Rev. Stat. chap. 59, sec. 9; 2 Pomeroy's Eq. Jur. sec. 1040; 2 Starr & Cur. Stat. 2021.

B. H. CANBY, and BARTHEL & FARMER, for defendant in error F. W. Kraft:

Where the evidence is doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon theories other than that of the existence of a resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing the trust. *McGinnis* v. *Jacobs,* 147 Ill. 24; *Goelz* v. *Goelz,* 157 id. 33; *Strong* v. *Messinger,* 148 id. 431.

Such evidence must be "clear, strong, unequivocal, unmistakable," and must establish the fact of the payment by the alleged beneficiary beyond a doubt. 10 Am. & Eng. Ency. of Law, p. 29, *et seq.*; *VanBuskirk* v. *VanBuskirk,* 148 Ill. 19; 2 Pomeroy's Eq. Jur. sec. 1040; *Henneke* v. *Floring,* 114 Ill. 554; *Green* v. *Dietrich,* id. 636; *Mahoney* v. *Mahoney,* 65 id. 406; *Goelz* v. *Goelz,* 157 id. 33.

To raise a resulting trust in favor of the wife on the ground that her money went into the purchase of land that fact must be clearly proved. It will not be inferred because the husband had in his hands sufficient money of the wife to have made the purchase. *Thomas* v. *Chicago,* 55 Ill. 403; *Keith* v. *Miller,* 174 id. 64; *Reed* v. *Reed,* 135 id. 482; *Corder* v. *Corder,* 124 id. 229; *Duval* v. *Duval,* 152 id. 49.

The rule is well settled that presumptions in favor of legal titles are so strong that evidence to overcome the same and show equitable title in another must be entirely clear and satisfactory. *Strong* v. *Messinger,* 148 Ill. 433; *McGinnis* v. *Jacobs,* 147 id. 31.

TURNER & HOLDER, for defendant in error Alexander Flannigen.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Plaintiffs in error, Jimason Jackson, Lyda Jackson and Martha Jackson, minor children of Sallie B. Kraft, deceased, by John P. Moore, their next friend, filed their bill in equity in the circuit court of St. Clair county against their step-father, the defendant in error Fred W. Kraft, asking the court to declare a resulting trust in their favor in certain real estate described in the bill. Said Sallie B. Kraft was the daughter of said John P. Moore and wife of the defendant Fred W. Kraft, and complainants are the children of a former marriage of said Sallie B. Kraft. The defendant in error Overton A. Kraft is the child of said Sallie B. Kraft and the defendant Fred W. Kraft, and said Overton A. Kraft was added as a defendant by amendment of the bill. The amended bill stated the relationship of the parties, and alleged that at the time of the marriage of said Sallie B. Kraft with the defendant Fred W. Kraft she was possessed of $15,000 in money, household furniture and effects to the value of $1500, a horse and carriage and other property, as her

186—40

separate estate; that she gave to her husband said sum
of money to be invested in real estate in the city of East
St. Louis and vicinity in her name, and that he purchased
the real estate described in the bill with the said money
of his said wife, Sallie B. Kraft, but took the title in his
own name. Complainants alleged that they were the
beneficial owners of said real estate as heirs of their said
mother, Sallie B. Kraft, and prayed that the title thereto
be decreed to have been held in trust for the use of said
Sallie B. Kraft until her death and after her death in
trust for complainants, and that said defendant Fred
W. Kraft account to them for rents, issues and profits of
said lands and the proceeds of lands sold by him, and
pay the same to them. The usual answer was filed for
the infant defendant, Overton A. Kraft. The defendant
Fred W. Kraft answered the bill, and complainants ex-
cepted to his answer for insufficiency and he was ruled
to file a further answer. He filed such further answer,
and the complainants again excepted thereto. The ex-
ceptions were overruled and complainants excepted to
the ruling. Complainants then filed replications to both
answers. The defendant in error Alexander Flannigen
filed an intervening petition for a vendor's lien upon cer-
tain premises described in the bill. The intervening pe-
tition was answered and replications were filed to the
answers. The court, upon a hearing, found the issues
formed on the bill against complainants and dismissed
the bill, and found the issues under the intervening pe-
tition in favor of the petitioner and decreed to him a
vendor's lien.

It is first contended that the second answer of Fred
W. Kraft was insufficient, and that the court erred in
overruling the exceptions thereto and should have re-
quired him to file a further answer. The charges of the
bill were, in substance, as before stated. The defendant
Fred W. Kraft by his answer denied that he received any
sum of money from his wife, Sallie B. Kraft, for the pur-

pose of investing the same in real estate or otherwise for her or in her name; that she gave him the sum of money mentioned in the bill to be invested in real estate, or that the sums of money mentioned in the bill, or any sum of money belonging to her, was invested by him in real estate. In the fourth paragraph of the exceptions one interrogatory contained in the bill is set out, and it is. alleged that said interrogatory is not answered but has been wholly ignored. With respect to that particular interrogatory we deem the answer sufficient. The other exceptions are general in their character, and allege in a general way that defendant has not answered the charges of the bill, and that the answer is vague, evasive and uncertain, avoiding disclosures of fact, circumstances and details, and is imperfect and insufficient. Exceptions to answers for insufficiency must be specific, and should state the charges in the bill and the terms of the answer, so that the court may see whether it is sufficient or not. (*Mix* v. *People*, 116 Ill. 265; 1 Ency. of Pl. & Pr. 903, and notes.) Aside from said interrogatory, the exceptions do not set forth the parts of the answer which are alleged to be insufficient, and the circuit court was not bound to pass upon their sufficiency.

The following facts were established by the evidence: About the year 1880 Sallie B. Moore was married to Joseph Jackson, of Helena, Arkansas. Three children, plaintiffs in error, were born of this marriage. Joseph Jackson's life was insured in favor of his wife for $8000, and after his death, which occurred December 15, 1890, the money was paid to her. She loaned $5000 of that money, secured by a trust deed, on a plantation near Helena, known as the "Clopton-Govan place." On February 14, 1895, she was married to defendant Fred W. Kraft, and the family lived in her residence in Helena until the following January, when they moved to East St. Louis. There was one child of this second marriage, the defendant Overton A. Kraft. The trust deed was

foreclosed and Sallie B. Kraft received the amount due, $5748.50, and deposited it in the People's Savings Bank in Helena, in her own name. She drew the following checks against said money in the Helena bank, payable to her husband, Fred W. Kraft, viz.: $1800 in January, 1896; $1000 in March, 1896; $25 in July, 1896, and $2000 in December, 1896,—amounting in all to $4825. The husband, Fred W. Kraft, also collected rents of her property and probably used them in repairs and improvements and supporting the family. After moving to East St. Louis, in January, 1896, the family lived in Fred W. Kraft's residence, known as the "Baugh avenue property." On April 10, 1896, he bought a lot in Dutcher's subdivision for $300, which he afterward sold for $480. In November, 1896, he purchased eighty acres of land in Madison county for $1500. On May 11, 1897, he sold the Baugh avenue residence for $4600, and on June 8, 1897, purchased certain lots mentioned in the bill, in Lovingston's addition to East St. Louis, for $3200. On one of the lots so purchased he erected a residence and moved the family to it, and mortgaged two of the lots for $3300, his wife joining in the mortgage. On October 25, 1897, he purchased the property described in the bill, known as the "Flannigen property," in East St. Louis. The consideration named in the deed was $30,000, but the true consideration was the assumption of a $6000 mortgage on the property, his unsecured note for $2000, (which is unpaid and for which a vendor's lien was established in favor of Flannigen,) a note for $500, another for $320, and about $200 cash, (the accrued interest on the $6000 mortgage,) and the eighty acres of land in Madison county. In the deed made by Fred W. Kraft and wife to Flannigen of the Madison county land the consideration named was $8000, but in the exchange it was actually taken for $1500. The Flannigen property had a store building on it, which was raised at a cost of $3000, and Kraft borrowed the money, taking up the $6000 mortgage and giving another, in

which his wife joined, for $9000. The wife also joined in a deed to one of the lots in Lovingston's addition, in February, 1898. The complainants claimed that their mother, Sallie B. Kraft, furnished the money to buy these lands and lots and that they were purchased and paid for with her funds.

Jimason Jackson, one of the complainants, and John P. Moore, their grandfather, testified to conversations with the defendant Fred W. Kraft and between said defendant and his wife, Sallie B. Kraft, in their presence and hearing, in which he made declarations and admissions sustaining the charges of the bill. Their testimony was to the effect that he importuned his wife to withdraw her investments in Helena and to allow him to invest the money in East St. Louis real estate, and promised that he would take the title in her name and keep it sacred as her separate estate, so as to preserve it for her children. They testified that she regarded $6000 of the insurance money as in trust in her hands for her children; that she finally yielded and collected the money, and turned over to him by the checks above mentioned, $4825, to be invested with other money of hers in real estate; that he admitted repeatedly that he purchased the Madison county farm, the Flannigen property and the Lovingston lots with her money, and that the house was built with her money, and that he promised to quit-claim the property to her and place the title in her name. They said that he always promised to keep the investments in her name; that when she found out that he had made them in his own name he promised to put the title in her name, and after her death he promised Moore to quit-claim to the children. Kraft denied all these conversations, and his testimony was a sweeping denial that these conversations, or any part of them, ever took place.

That the defendant Fred W. Kraft received a large amount of money from his wife is not denied, but it is claimed that the law will presume that she gave it to

him. The evidence tends to show that rents collected by him were expended in repairs on her property or the expenses of the family with her knowledge and assent; but the evidence, the situation of the family and the circumstances show that the principal sums were not received as a gift by him. A gift of such sums by her to him would not be presumed in the absence of proof to that effect. Where a husband receives the capital fund of his wife's property, there is no presumption that she intended to give it to him. (*Tomlinson* v. *Matthews*, 98 Ill. 178; *Reed* v. *Reed*, 135 id. 482.) The money came from the insurance on the life of complainants' father, and Kraft was undoubtedly to use or invest it for the benefit of his wife and to account for it to her in some manner. The bill, however, charges that he purchased certain real estate with it, and that a resulting trust in such real estate arose from his purchases with the fund. Such a trust can only arise where a party furnishes the whole consideration or some definite part or share thereof, and the evidence fails to show that fact so as to enable the court to declare a trust. None of the checks correspond in amount or date with either investment. Kraft owned the Baugh avenue property, and sold it for $4600 shortly before the purchase of the lots in Lovingston's addition. There is a strong inference that the lots were paid for from the proceeds of the Baugh avenue property. He mortgaged two of the lots for $3300, and it seems likely that the house was paid for with the proceeds of that loan. At any rate, it is not shown that the lots were bought or the house built with the money of Mrs. Kraft. The facts creating a resulting trust must be clearly proved, and while the evidence shows that Fred W. Kraft had his wife's money and used it in his investments and trades, it does not establish a resulting trust. Mrs. Kraft confided in him and gave him the money, trusting that he would manage it for her benefit. She certainly knew that the titles to the lands were not taken in her name.

She joined with him in deeds and the execution of mort-
gages, releasing her dower and homestead rights, and
must have known that the title was in him. His promise
to quit-claim property to her or to put the title of prop-
erty in her name would not create a resulting trust, and
the promise he may have made to Moore after her death
would not have that effect. There is no complaint that
the court did not grant some other relief than the decla-
ration of such a trust, and the averments of the bill were
appropriate only to that relief.

Errors are assigned on the granting of relief to the
intervening petitioner, Alexander Flannigen, and estab-
lishing a vendor's lien in his favor; but as we think the
court did not err in dismissing the bill, the defendants
have no interest in that branch of the case.

Finding no error in the record the decree of the cir-
cuit court is affirmed.                    *Decree affirmed.*