In the Matter of the Accounting of MAY R. KELLY et al., as Executors of PETER A. KELLY, Deceased, Respondents. MARY C. KELLY et al., Appellants.

Argued January 9, 1941; decided March 6, 1941.

*Thomas E. Shea* for appellants.

*Charles W. U. Sneed* for respondents.

LEHMAN, Ch. J.   The decedent agreed to pay to his wife "for the support and maintenance of her son, John J. Kelly, the sum of $100, monthly, just so long as the boy shall remain in college; the said payments to commence as of the date June 1, 1930." In accordance with that agreement, it was provided in the decree of divorce that "the defendant do pay to the petitioner for the support and maintenance of the son of the parties to this suit, John J. Kelly, the sum of $100 monthly as long as the said son shall continue to be a student at college said payments should commence as of the first day of June, 1930, that said payment should be in lieu of and in satisfaction of all claims for alimony or support of the petitioner." Regardless of whether or not the Court of Chancery of New Jersey retained power to amend that provision in the decree of divorce, we agree with the determination of the courts below that the decedent's estate must pay any sum due and unpaid in accordance with the terms of the obligation imposed upon the decedent with his consent. The question remains whether the decedent was under any obligation to pay $100 a month after his son received a degree upon graduation from Yale College which he entered in the autumn of 1930, and from which he graduated in June, 1934.

The word "college" is not a word of art which, by common understanding, has acquired a definite, unchanging significance in the field of education. Its meaning varies with its context. Though at times it is used to denote any institution of higher learning, including institutions for

professional or post-graduate study, it is frequently used, perhaps I should say ordinarily used, in this country, to denote an " undergraduate " school for instruction in liberal arts having a course of study commonly requiring four years for completion and leading to a bachelor's degree. That is the sense in which the word is used in the rules of this court for the admission of attorneys and counselors at law. At the time the decedent assumed the obligation of paying $100 per month for the support of his son " just so long as the boy shall remain in college," the boy was about to enter Yale College. Yale College is the name commonly applied to the undergraduate department of Liberal Arts of Yale University. Here the courts below have unanimously found that the decedent's obligation was intended to be confined to the period when the " boy " continued a four-year undergraduate course leading to a bachelor's degree.

The decedent did not, I think, *unequivocally* assume an obligation to pay $100 a month for the support of his son so long as his son might desire to continue as a student in any institution of higher learning here or abroad. The boy's mother, as Judge RIPPEY points out, was a woman of substantial means, willing and able to pay expenses for the son at an English college or university, far beyond the expenses of even wealthy students at American colleges. I find here no basis for any inference that the father con-templated that it would be " necessary " for the mother to pay the large amounts she chose to pay for the education of the " boy " even after the " boy " became a man, or that the sum agreed upon " was the largest amount that the resources of the father would permit him to contract to pay " to the mother " by way of reimbursement." At least a question of fact was in my opinion presented by the evidence and the finding of fact by the courts below is fully justified. We may not disturb that finding if there is *any* evidence to sustain it.

We agree that all the other questions presented upon the appeal should be determined as indicated in the opinion of Judge RIPPEY.

The order of the Appellate Division and the decree of the Surrogate's Court should be modified to the extent that the claim of Mary C. Kelly for the return of the ring should be allowed and as so modified affirmed, with costs to claimant-appellant and the respondents payable out of the estate.

RIPPEY, J. (dissenting in part). Peter A. Kelly, a resident of Cornwall-on-Hudson, Orange county, died on December 3, 1937, leaving a last will and testament dated October 15, 1937, in which he named his wife, May Roach Kelly, whom he married in October, 1931, and the Highland-Quassaick National Bank and Trust Company of Newburgh as executors of his estate. The will was admitted to probate on January 4, 1938, and letters testamentary were issued to those named by deceased under which they qualified as executors of his estate, entered upon the discharge of their duties and are still acting as such. The decedent left a son, John J. Kelly, the issue of a former marriage, who was born on January 2, 1913. The son's mother was Mary C. Kelly, whom the testator had married on September 6, 1911. She was granted an interlocutory decree of divorce from testator in New Jersey on December 13, 1930, which was made final in regular course on March 14, 1931.

Mary C. Kelly filed two claims with the executors against the estate. One was for unpaid items of one hundred dollars per month with interest claimed to be due from the deceased by virtue of the provisions of the divorce decree and the other was for the return of a diamond ring which she claimed belonged to her. Both claims were rejected by the executors and stipulation was given that determination of the claims might be made upon the final accounting. The account of the executors was filed on October 1, 1938, but contained no reference to the diamond ring. The son filed objections to the account, among which was an objection to the failure of the executors to account for the ring which he claimed to be a part of the estate of the deceased. On the hearing upon the claims and objections, May Roach Kelly asserted that the ring belonged to her

by virtue of a gift from her deceased husband made shortly before his death. The claims of Mary C. Kelly were both disallowed. The objection of the son to the account on the ground that the ring belonged to the estate was sustained, the widow's claim to ownership of the ring was overruled and the executors were required to account for the ring. Other objections made by the son were either sustained or disallowed. Otherwise the account as filed was approved. Upon appeal to the Appellate Division, the decree of the Surrogate entered upon the accounting was unanimously affirmed except in the single respect that a portion of the claim of Mary C. Kelly, disallowed by the Surrogate, was allowed by the Appellate Division. We agree with the determination made by the courts below upon all matters except those involved in the claims filed by Mary C. Kelly.

The action for absolute divorce on the ground of willful, continued and obstinate desertion was commenced by Mary C. Kelly under the laws of the State of New Jersey while both parties were residents of that State by personal service of process upon her husband within that State. It was found, as alleged by her, that she had been a *bona fide* resident of the State continuously for two years next preceding the commencement of the action. In such circumstances, the New Jersey statute authorizes the granting of an absolute divorce (2 Rev. Stat. ch. 50). Her then husband appeared generally by counsel although he defaulted in pleading. A stipulation was entered into by counsel in open court upon the hearing before the Special Master which, among other things, provided:

" It is stipulated and agreed that the defendant, Peter A. Kelly will pay to the petitioner for the support and maintenance of her son, John J. Kelly, the sum of $100.00, monthly, just so long as the boy shall remain in college; the said payments to commence as of the date June 1, 1930.

" It is further stipulated that the Master shall so report and this provision may be employed in the final decree made in this cause.

"It is further stipulated and agreed that the above mentioned payments to be made by the defendant, shall be in lieu and in satisfaction of all claims of alimony or support by the petitioner."

Jurisdictional requirements having been satisfied, after hearing and the taking of proof, the interlocutory decree of divorce was granted and duly filed with the agreement incorporated therein in the following words: "And it is further ordered, adjudged and decreed that the defendant do pay to the petitioner for the support and maintenance of the son of the parties to this suit, John J. Kelly, the sum of $100 monthly as long as the said son shall continue to be a student at college said payments should commence as of the first day of June, 1930, that said payment should be in lieu of and in satisfaction of all claims for alimony or support of the petitioner."

The decree *nisi* was later confirmed by the final decree as above indicated. The first claim of Mary C. Kelly was based upon the foregoing stipulation and decrees for the sum of $11,047.50 claimed to be due to her from the deceased in monthly installments of one hundred dollars from June, 1930, to June, 1937, inclusive, with interest from the respective dates when the installments became due.

In the action for divorce, since the Court of Chancery had jurisdiction of the parties and of the subject-matter (Revised Statutes of New Jersey, [1937] vol. 1, tit. 2, ch. 50 [N. J. Stat. Annotated, tit. 2, ch. 50]), the decree is conclusive upon the parties in this State (*Jones* v. *Jones*, 108 N. Y. 415; *Guggenheim* v. *Wahl*, 203 N. Y. 390, 396, 397). The constitutional requirement that full faith and credit shall be given to the judgments and decrees of other States requires, where applicable, that such other States shall give to the decree such force and effect as it was entitled to receive in the State in which it was rendered (*Haddock* v. *Haddock*, 201 U. S. 562, 567). Applicable alike is that requirement to judgments in actions at law and to decrees in equity and of courts of chancery (*Harding* v. *Harding*, 198 U. S. 317, 335). Consequently, respondents seek to maintain here

that the New Jersey decree awarding monthly payments for the son was not enforceable in the courts of this State as the appellants seek to enforce it since, it is asserted, the provision for the payments for the support and maintenance of the son was not final but was alterable by the Court of Chancery of New Jersey in its discretion at any time (*Lynde* v. *Lynde*, 181 U. S. 183; *Sistare* v. *Sistare*, 218 U. S. 1; *Yarborough* v. *Yarborough*, 290 U. S. 202). We are not called upon to consider the point which respondents seek to raise. The Appellate Division has determined that the decree directing the monthly payments must be enforced in our courts either on the ground that it was here entitled to full faith and credit or on the ground of comity. No party adversely affected has taken any appeal to this court. Under the conditions here, if enforceable in part it is enforceable as a whole.

The Appellate Division has sustained the abstract right of Mary C. Kelly to recover on the basis of the agreement between the parties as embodied in the decree. The fact is that neither the husband in his lifetime, nor the son nor the claimant at any time, has attempted to alter the agreement or the decree. The agreement was partly performed and the decree partly complied with by the husband and never objected to or attacked. The agreement was valid under the laws of either State (*Sobel* v. *Sobel*, 99 N. J. Eq. 376; *Clark* v. *Fosdick*, 118 N. Y. 7) and was valid and enforceable everywhere until altered or changed or set aside by the parties or by a court of competent jurisdiction. It is unimportant whether the obligation of support, maintenance and education on the part of the father toward the son existed generally only during the minority of the son (*Snover* v. *Snover*, 13 N. J. Eq. 261). The obligation to support the wife continued during the husband's lifetime and would be enforceable in any appropriate jurisdiction unless sufficiently and providently and unalterably satisfied by agreement of the parties or by duly authorized adjudication of a court. There was adequate consideration for the agreement. In this case, the agreement made by the

husband and wife, subsequently embodied in the decree, was that, in lieu of alimony and support to the wife, the husband would furnish a monthly allowance toward the support and maintenance (which included education) of the son " as long as the said son shall continue to be a student at college " regardless of minority.

It seems to me that the lower courts have misconstrued the provisions of the agreement and decree. The son was a student at Yale College at the time the decree of divorce was entered and was graduated from that institution in 1934. The Surrogate found upon ample evidence, and the finding was approved by the Appellate Division, that the testator paid the claimant the sum of $4,075 by virtue of the obligation created. It was found by the Surrogate that such payment constituted full compliance with the terms of the decree. As a basis for such finding, the Surrogate held that he might take judicial notice that the college year did not exceed ten months and that " there is nothing in the stipulation, nor in the circumstances of the parties having regard also to the amount of the testator's estate that would indicate anything more than the usual four years course was intended to be covered by this stipulation." The Appellate Division modified the finding so as to allow the claimant one hundred dollars per month for each of twelve months for each of four years. To the knowledge of the testator, his son continued his college course in Kings College, Cambridge, England, for three years after graduation from Yale and was attending Harvard University at the time of his father's death. During the years the boy was in college, the boy's mother, herself being of substantial means independent of his father, paid all expenses for his support, maintenance and education out of her own resources in an amount averaging between ten thousand and twelve thousand dollars per year. The stipulation and decree provided in unequivocal language that the mother should be paid the sum of one hundred dollars per month as long as the testator's son should continue to be a student at college. Clearly, it may be inferred that it was the

largest amount that the resources of the father would permit him to contract to pay for the support, maintenance and education of the son by way of reimbursement toward the large amounts which the parties contemplated would be necessary for the mother to pay for that purpose. No circumstance appears warranting any construction that a limitation to a specific four-year college course was intended. The provision clearly meant continued attendance at college and it must be presumed that the testator and the claimant had in mind the fact that more than four years may be required in preparation for many professions and vocations and for specialization in many fields leading to academic and higher degrees.

The conclusion follows that the terms of the agreement between the parties as embodied in the stipulation and divorce decree required the Surrogate to hold that claimant was entitled to receive from the estate of the deceased such an amount as would total the monthly payments provided for from June 1, 1930, for twelve months each year, to June, 1937, in accordance with the claim, less $4,075 which has been found to have been paid to her by the testator under his aforesaid obligation to pay, with interest upon the monthly items unpaid as they became due.

The ring in question consisting of a valuable diamond in a platinum white gold setting was purchased by Mary C. Kelly with her individual funds in 1928. She purchased the stone and had it placed in a " gypsy " setting especially planning to give it to her son. She attempted to deliver it to him but he refused to accept delivery on the ground that it was " too flashy." There was no delivery to the son, actual, constructive or symbolical, or to any one else for or on his behalf, in fact or in law, and acceptance by him could not be implied. Anything short of delivery strips the attempted gift " of the quality of completeness which distinguishes an intention to give, which alone amounts to nothing, from the consummated act, which changes the title. The intention to give is often established by most satisfactory evidence, although the gift fails " (*Beaver* v.

*Beaver,* 117 N. Y. 421, 429; see, also, *Matter of Van Alstyne,* 207 N. Y. 298). The son never, in fact, accepted the ring. There is no evidence that he ever wore it or had it in his possession. He has asserted here that the ring should be accounted for by the executors and makes no personal claim to title to the property.

At the time of the attempted gift to the son, the claimant and the deceased were living together as husband and wife with the son who had not then entered college. The ring was the separate property of the claimant. She had title to it. The Surrogate has found that the testator wore the ring for a number of years and that it was in the possession of the deceased until shortly before his death when, during his last illness, he handed it to his wife, May Roach Kelly, for safekeeping. The widow makes no assertion that she, at any time, came into its possession from claimant. There is neither testimony nor finding as to when or under what particular circumstances the deceased came into possession of the ring. The Surrogate held that the fact that the deceased had possession of the ring was sufficient proof of a gift of the ring to him and that decision has been affirmed by the Appellate Division.

The mere fact, if it were a fact, under the circumstances disclosed at the time of the attempted gift to the son, that the ring was then left in the possession of the deceased, gave rise to no presumption of any intent on the part of the claimant to give the property to the husband or to divest herself of title thereto. There is no evidence that she then left the ring in his possession. But had it appeared that claimant then left the ring in the possession of the husband while they were living together as husband and wife at the same place and under the circumstances here disclosed, that possession would be insufficient to establish a valid gift to him (*Brink* v. *Gould,* 7 Lans. 425) in the absence of proof of a perfected gift. If there were any change at all in the status of the property in the mere circumstance that she let the husband take possession of it and use it, it would amount to nothing more than that the

custody thereof was joint and joint custody negatives any idea of a gift (*Young* v. *Young*, 80 N. Y. 422). No presumption can arise that the ring was then delivered into the possession of the husband with intention on the part of the claimant to part with title thereto from the mere fact, as found, of subsequent possession or use by the husband (*Jackson* v. *Kraft*, 186 Ill. 623; *Chadbourn* v. *Williams*, 45 Minn. 294; *Stickney* v. *Stickney*, 131 U. S. 227). Had there been evidence that the claimant delivered possession of the ring to the husband, though he subsequently continued to hold possession and used the ring under the circumstances here disclosed, his status then could have been only, at the best, that of the agent of claimant to deliver the ring to the son or of custodian of the ring for the son's benefit. There is no evidence that the deceased at any time during his lifetime claimed that the ring belonged to him. On the contrary, within a short time before his death he asked his son when he was going to take and wear the ring. " The law never presumes a gift " (*Matter of Bolin*, 136 N. Y. 177, 180). To establish that a gift had been made, the burden rested upon respondents to show by the clearest evidence each and every element essential to establish that a gift was made (*Boyd* v. v. *De La Montagnie*, 73 N. Y. 498; *Shuttleworth* v. *Winter*, 55 N. Y. 624, 629; *Doty* v. *Willson*, 47 N. Y. 580; *Farmer's Executor* v. *Farmer*, 39 N. J. Eq. 211). To establish a valid gift *inter vivos*, there must have been an intention to give, delivery of the thing given to the donee pursuant to that intention and acceptance of the gift by the latter (*Beaver* v. *Beaver*, *supra*). So far as testator is concerned, there is not a shred of evidence in this case to establish the presence of any one of those essential elements. It would shock the sense of right, if a possession which was, at most, only permissive, while entirely consistent with the title of another, should silently bar that title.

The order appealed from should be modified so as to provide for the allowance of the two claims of Mary C. Kelly to the extent indicated in this opinion, with costs

to her in this court and in the Appellate Division, and, as so modified, affirmed and the matter remitted to the Surrogate to enter a modified decree accordingly, with costs thereon in the Surrogate's Court, all costs payable out of the estate.

LOUGHRAN, FINCH and CONWAY, JJ., concur with LEHMAN, Ch. J.; RIPPEY, J., dissents in part in opinion in which LEWIS and DESMOND, JJ., concur.

Ordered accordingly.