DANIEL C. FLYNN, ADMINISTRATOR (ESTATE OF THOMAS C. O'CONNOR) *v.* CATHERINE E. HINSLEY ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued March 8—decided April 5, 1955

*David Cramer,* with whom was *John F. Bianchi,* for the appellant (defendant Timothy L. Cagney).

*Edward F. Halloran,* for the appellees (named defendant et al.).

*Cornelius D. Shea,* for the appellee (plaintiff).

INGLIS, C. J. The ultimate question on this appeal is whether the trial court was correct in its determination of the ownership of three bank accounts payable to the plaintiff's decedent or the named defendant or the survivor, and of two bank accounts payable to the plaintiff's decedent or the defendant Thomas C. Cagney or the survivor.

The finding, in so far as it is not attacked, sets forth the following facts: Thomas C. O'Connor died on December 16, 1951, and the plaintiff is the administrator of his estate. Catherine E. Hinsley was his niece and Thomas C. Cagney his nephew. O'Connor had lived in Mrs. Hinsley's home and had been cared for by her from the fall of 1947 until his death. She was a natural object of his bounty. There was a strong mutual feeling of affection between O'Connor

and Thomas Cagney, who was also a natural object of O'Connor's bounty. On July 24, 1941, O'Connor transferred an account in the Mechanics Savings Bank of Winsted which theretofore had stood in his name alone to a so-called joint account with Mrs. Hinsley. That is, it was made payable to either O'Connor or Mrs. Hinsley or the survivor of them. On January 7, 1949, he, with his own funds, established two similar joint accounts, one in the State Savings Bank in Hartford and the other in the Society for Savings in Hartford. Mrs. Hinsley made no contribution to any of these accounts. An account which O'Connor had in the Winsted Savings Bank was made by him into a joint account with Thomas C. Cagney on July 24, 1941, with right of survivorship. On July 28, 1941, O'Connor also established a joint and survivorship account with Thomas Cagney in the Canaan Savings Bank. The funds which went into these two accounts were those of O'Connor alone.

All five of the bankbooks evidencing the joint accounts were kept in a locked suitcase in O'Connor's room and the keys to the suitcase were at all times in O'Connor's possession. On September 18, 1951, however, O'Connor delivered to Mrs. Hinsley the three books upon which her name appeared, namely, the book representing the account in the Mechanics Savings Bank, which showed a balance of $10,000; the book representing the deposit in the State Savings Bank, which showed a balance of $3156.91; and the book issued by the Society for Savings, which showed a balance of $3150.38. As O'Connor handed Mrs. Hinsley the books, he told her that they and the money represented by them were hers. From then on until after O'Connor's death Mrs. Hinsley kept the three books in her exclusive possession.

On the same day, after O'Connor had delivered the books to Mrs. Hinsley, he signed an order for the withdrawal by her of $600 from the Mechanics Savings Bank, and she made the withdrawal by virtue of that order. O'Connor's purpose in signing the order was to facilitate the withdrawal and also to identify Mrs. Hinsley at the bank. Between September 18, 1951, and O'Connor's death, Mrs. Hinsley made two other withdrawals from the account in the Mechanics Savings Bank on slips signed by her alone and used the money for her own purposes, without accounting for it to her uncle.

On Thanksgiving Day, 1951, O'Connor turned over to Thomas Cagney the bankbook representing the joint account in the Canaan Savings Bank, where the balance was $4916.20, and the bankbook representing the joint account in the Winsted Savings Bank, where the balance was $10,000. O'Connor then told Thomas Cagney that the bankbooks and the money they represented were his, Thomas Cagney's. From then until after O'Connor's death these books remained in the exclusive possession of Thomas Cagney.

The defendant Timothy L. Cagney was also O'Connor's nephew, but for him O'Connor felt little or no affection. The three defendants are O'Connor's heirs at law.

The court concluded that O'Connor made delivery of possession of the three bankbooks to Mrs. Hinsley and of the two bankbooks to Thomas Cagney with the intention that title to the books and to the bank accounts they represented should pass immediately to Mrs. Hinsley and Thomas Cagney, respectively, and rendered judgment declaring that Mrs. Hinsley has title to and ownership of the three savings bank accounts and Thomas Cagney has title to and owner-

ship of the two bank accounts. From this judgment the defendant Timothy L. Cagney has appealed, assigning error in the foregoing conclusions and also in the claimed failure of the court to adopt some of his claims of law bearing on the question of the quantum of evidence requisite to prove gifts such as those claimed by the other defendants.

The principles of law controlling the decision of a case in which it is claimed that a decedent has made a gift of a bank account payable to either himself or another or the survivor are enunciated in *Bachmann* v. *Reardon,* 138 Conn. 665, 88 A.2d 391, and *Driscoll* v. *Norwich Savings Society,* 139 Conn. 346, 93 A.2d 925. To constitute a valid gift inter vivos, it is essential that there be (1) a delivery of possession, usually to be accomplished by delivery of the bankbook evidencing the account, with (2) an intention on the part of the donor that title, as distinguished from the right of enjoyment, shall pass to the donee immediately rather than upon the death of the donor. *Bachmann* v. *Reardon,* supra, 667. In the present case the trial court, without question, was justified in finding that possession of the bankbooks had been delivered by O'Connor to Mrs. Hinsley and Thomas Cagney, respectively. The basic question, therefore, is whether the court was also warranted in finding that it was O'Connor's intention to pass the title to the accounts to those defendants immediately.

In passing, it should be noted that the General Assembly in 1953 enacted a statute providing that the making of a bank deposit in an account payable to either of two persons or the survivor shall, in the absence of fraud or undue influence, be conclusive evidence of the intention of both of the named owners of the account to vest title to the deposit in

the survivor. General Statutes, Cum. Sup. 1953, § 2102c. This statute by its terms, however, does not apply to any deposit where either owner died before October 1, 1953. Consequently it has no application to the case at bar, since O'Connor died in December, 1951.

The question whether in delivering a bankbook it was the intention of the claimed donor immediately to transfer title to the bank account is one of fact for the determination of the trier. *Driscoll* v. *Norwich Savings Society,* supra, 349. The determination by the trial court of what the intention was is not reviewable unless its conclusion is one which could not reasonably have been made. *Kriedel* v. *Krampitz,* 137 Conn. 532, 534, 79 A.2d 181; *Hartford-Connecticut Trust Co.* v. *Slater,* 114 Conn. 603, 612, 159 A. 578.

The burden was on Mrs. Hinsley and Thomas Cagney to prove that it was the intention of O'Connor to make an immediate transfer of the title of the accounts to them respectively. *Kriedel* v. *Krampitz,* supra, 534. Indeed, just as in the case of any other person who presses a claim against a decedent's estate, and for the same reasons, it was incumbent on these defendants to prove that this was O'Connor's intention by clear and satisfactory proof. *Burton* v. *Bridgeport Savings Bank,* 52 Conn. 398, 403; *Matter of Kelly,* 285 N.Y. 139, 150, 33 N.E.2d 62; *Wyatt* v. *Moran,* 103 A.2d 801, 803 (R.I.); *Colby's Executor* v. *Poor,* 115 Vt. 147, 154, 55 A.2d 605; 24 Am. Jur. 799 § 133; 38 C.J.S. 869, § 67; see *Taylor* v. *Corkey,* 142 Conn. 150, 153, 111 A.2d 925; *Graybill* v. *Plant,* 138 Conn. 397, 400, 85 A.2d 238. Although the appellant claims the contrary, there is nothing in the record to indicate that the trial court failed to recognize and apply this rule as to the quantum of proof.

The findings that as O'Connor delivered the bankbooks to Mrs. Hinsley and Thomas Cagney he told them that the books and the money represented by the books were theirs, respectively, are not questioned by the appellant. These findings alone would constitute ample support for the court's inference of the requisite intention. Coupled with that are the findings concerning the friendly relationships between O'Connor and these two defendants; that during the lifetime of O'Connor Mrs. Hinsley made withdrawals from at least one of the accounts and used the money for her own purposes without accounting to him; and that he himself at no time after he handed over the bankbooks made any attempt to withdraw money from any of the accounts. All of this is strongly indicative of an intention on his part to make a transfer of title to the accounts at the time he delivered the bankbooks.

From the fact that on the same day on which O'Connor handed the Mechanics Savings Bank book to Mrs. Hinsley he signed an order directing that bank to pay her $600 out of that account, the appellant argues that it must necessarily be inferred that O'Connor intended to keep control of that account and therefore that he had no intention of transferring title to either that account or any other to Mrs. Hinsley. The trial court, with reason, explains that act not as indicative of an intent to retain control of the account but as done for the purpose of identifying Mrs. Hinsley at the bank and facilitating future withdrawals by her.

There is no merit to the appellant's claim that the court could not find the issues for the other defendants because their respective cases rested on their own uncorroborated testimony. Their testimony was corroborated at least by the undisputed

fact that they had the bankbooks in their own possession. Moreover, the court was entitled to believe their testimony if it was satisfied of their credibility. Nor is there any force to the contention that the failure of those defendants to produce witnesses who might have been near when the bankbooks were delivered would compel the inference that the testimony of such witnesses would have been adverse to those defendants. It does not appear that any other person was present when O'Connor delivered the bankbooks to Mrs. Hinsley or to Thomas Cagney.

On the whole case, it is clear that the trial court was warranted in inferring that at the time O'Connor gave the bankbooks to Mrs. Hinsley it was his intention immediately to transfer title to the accounts represented by them to her, and also in inferring that when he delivered the bankbooks to Thomas Cagney it was his intention immediately to transfer title to the accounts they represented to that defendant. It follows that the court's conclusion that in each case there had been a valid gift inter vivos was correct.

There is no error.

In this opinion BALDWIN, WYNNE and DALY, Js., concurred.

O'SULLIVAN, J. (concurring). I prefer to rest my concurrence on the ground that the defendants Catherine E. Hinsley and Thomas C. Cagney are, upon a proper correction of the finding, entitled to the bank accounts in question by virtue of a right of survivorship, and not, as the trier held, because of a gift so complete in character as to have destroyed all of the donor's interest in the accounts, including his own right of survivorship.