## JOHN STEEVES *vs.* ANTONIA BERIT.

No. 03-P-1662.

Middlesex. October 15, 2004. - August 17, 2005.

Present: PERRETTA, DOERFER, & MILLS, JJ.

*Divorce and Separation,* Child support. *Parent and Child,* Child support, Education. *Contempt. Practice, Civil,* Contempt.

In an action for contempt arising from a judgment of divorce nisi, in which one Probate and Family Court judge ordered that the defendant might be heard on the issue of the date of the emancipation of the parties' daughter, but did not enter a judgment or order for judgment on the complaint for contempt, a second Probate and Family Court judge did not err in considering all of the facts relevant to the question of emancipation and in amending the order of contempt. [269]

In an action for contempt of a judgment of divorce nisi, the Probate and Family Court judge correctly ruled that the defendant had not wilfully disobeyed a clear and unequivocal order of the court, where the emancipation clause of the parties' divorce agreement was not free of ambiguity as to the requirement that the parties' daughter actively pursue a college education. [271-275]

There was no merit to contentions that the findings of fact of the judge in a civil action were not supported by the evidence, or that the judge erred as a matter of law in denying the plaintiff's motion for attorney's fees. [275-276]

COMPLAINT for divorce filed in the Middlesex Division of the Probate and Family Court Department on August 20, 1984.

A complaint for contempt, filed on February 25, 2003, was heard by *Edward J. Rockett,* J.

*Ellen S. Zack* for the plaintiff.

*Ara H. Margosian, II,* for the defendant.

PERRETTA, J. John Steeves's appeal from the dismissal of his contempt complaint against Antonia Berit, his former wife, raises the question whether she was in contempt of court by reason of her alleged violation of the terms of the divorce judgment which ordered the parties to comply with the terms of

their divorce agreement when she failed to inform him that their twenty-one year old daughter was no longer enrolled in or attending courses at any college. According to the agreement, Steeves would pay child support beyond the daughter's eighteenth birthday if she were "actively pursuing a college education." In that event, the daughter would not be emancipated until she had completed college "in the normal course" or had "attain[ed] the age of 21 years," whichever was "last" to occur. A Probate and Family Court judge concluded that in the circumstances presented, the wife did not disobey a clear and unequivocal command, dismissed Steeves's contempt complaint, and denied his request for counsel fees. We affirm the judgment.

1. *Background.* On February 11, 1985, the parties entered into a divorce agreement (agreement). Their divorce judgment, entered on September 16, 1985, provided that their agreement was incorporated and merged in the judgment and that the "parties are ordered to comply with the terms of [their] Agreement."[1] As relevant to the present dispute, the agreement provides:

> "[Steeves] agrees to pay $100.00 per week for the support of the child until emancipation of the child. Emancipation of the child shall occur or be deemed to have occurred upon . . .

> "a. attaining the age of 18 years, *except* that if the child is actively pursuing a college education, emancipation will not occur until the child has completed her college course in the normal course or attains the age of 21 years, whichever comes last" (emphasis supplied).

On June 9, 1995, Steeves's weekly child support obligation was increased to $250 and made subject to a wage assignment in accordance with the terms of a "Stipulation/Agreement of

---

[1]Both Steeves and Berit proceed before us on the theory that contract principles apply to their dispute, and neither considers the effect, if any, of the fact that their divorce agreement expressly provides that it was to be merged in their judgment of divorce. Compare *Kotler* v. *Spaulding,* 24 Mass. App. Ct. 515, 516 n.3 (1987). See generally *Gottsegen* v. *Gottsegen,* 397 Mass. 617, 624 n.8 (1986); *Bercume* v. *Bercume,* 428 Mass. 635, 638-642, 643-644 (1999). The standard form language of the judgment of divorce provides that the agreement "is incorporated and merged in the judgment," and a line was drawn through the words "and which, by agreement of the parties may also remain as an independent contract."

the Parties dated June 9, 1995, . . . filed with the Court" and incorporated into its order on a complaint for modification. In all other respects, the parties' agreement and judgment of divorce were to remain "in force and effect."

When in September, 2002, Steeves learned that his daughter had not been enrolled in college or attending classes at any other school since December, 2001, he brought an ex parte motion to terminate his child support obligation and the wage assignment. The motion was accompanied by an affidavit, prepared by Steeves's attorney and signed by Berit on October 2, 2002, in which she stated that the twenty-two year old daughter was emancipated and that she, Berit, assented to the vacating of the wage assignment order. On October 7, 2002, a judge relieved Steeves of his child support obligation and ended the assignment of his wages. Soon thereafter Berit received a check from Steeves's employer, presumably because the employer had either yet to receive or yet to note on its payroll records the order ending the wage assignment. She endorsed the check over to Steeves and returned it to him.

About a month later, on November 14, 2002, Berit signed a civil contempt complaint alleging that Steeves, beginning on September 13, 2002, had failed to make support payments for their daughter and failed to pay one-half the amount of the uninsured medical expenses incurred on her behalf. The complaint was filed on January 27, 2003. On February 25, 2003, Steeves filed a contempt complaint against Berit claiming that because Berit had failed to inform him that their daughter had left school in December, 2001, and was, therefore, emancipated as of that time, he had unnecessarily paid $10,000 in child support, for which he sought reimbursement as well as the fees and costs he had incurred in the matter.

Because the divorce judgment ordered Steeves and Berit "to comply with the terms" of their agreement, the question whether either of them had violated that order turns on the terms of their agreement. It appears on the materials before us that Berit's complaint and her defense against Steeves's complaint was that the daughter was not emancipated and that she, Berit, had no memory of signing the documents dated October 2, 2002, in which she stated that she agreed with Steeves that the daughter was emancipated.

After a hearing on March 10, 2003, a judge ruled on Berit's complaint against Steeves that she did not find Berit's allegation of a memory lapse credible, found Steeves not guilty of contempt, and entered a judgment in his favor on Berit's complaint against him.

On Steeves's complaint against Berit, the judge found Berit guilty of contempt on the express basis that she had failed to notify Steeves about their daughter's failure to pursue a college education and entered the following order:

> "[Berit] may be heard on th[e] issue of [the] date of emancipation. [She] may request an evidentiary hearing on the amount of child support overpaid and ability to pay. If [Berit] fails to request a hearing, the matter shall be heard and an affidavit with accompanying documents shall be filed by [Steeves]. . . . [The] matter is continued to May 12, 2003, for status review."

No judgment or order for judgment was entered or made on Steeves's complaint against Berit.

After three months passed without any request from Berit for an evidentiary hearing, Steeves brought a motion asking that a deadline of July 11, 2003, be established for Berit's request and that should she fail to meet that deadline, a judgment in the amount of $22,899.60 be entered on his complaint against her.[2] The judge allowed the motion, and permitted Berit until July 30, 2003, to request an evidentiary hearing on Steeves's complaint against her. Berit complied with that order and requested the evidentiary hearing authorized in the order of March 10, 2003.

A second Probate and Family Court judge conducted the evidentiary hearing. Based on the evidence presented and the facts found, he concluded that during the period in question (December, 2001, through October 11, 2002), the daughter was not emancipated within the meaning of that term as used in the parties' agreement and, therefore, that Berit had not clearly, wilfully, and unequivocally violated any clear order of the Probate and Family Court.

---

[2]According to Steeves's affidavit accompanying his motion, that amount, $22,899.60, was based on reimbursement for his "overpayment of child support" as well as counsel fees and costs incurred in connection with this action.

2. *Scope of the evidentiary hearing.* As a preliminary matter, Steeves argues that the second judge erroneously failed to limit the scope of the evidentiary hearing to what he perceives to be the single issue described by the first judge in her order of March 10, 2003, that is, according to him, the amount of any overpayment made by him on account of Berit's failure to notify him that their daughter had been emancipated, and Berit's ability to pay. This argument fails for several reasons.

Although it was not open to the second judge to amend the judgment on Berit's complaint against Steeves, it was within his power to consider all the facts relevant to the question of emancipation and, consequently, to amend the order of contempt on Steeves's complaint against Berit.[3] See *Riley* v. *Presnell*, 409 Mass. 239, 242 (1991). See also *Salter* v. *Scott*, 363 Mass. 396, 401-402 (1973); *Catalano* v. *First Essex Sav. Bank*, 37 Mass. App. Ct. 377, 384 (1994).

3. *The evidentiary hearing.* We relate the facts as the second judge found them to be based on the evidence presented to him at the evidentiary hearing on the issue of the date of the daughter's emancipation. There was evidence to show that although the daughter was enrolled in college in September, 1999, she was forced to withdraw from her studies in December, 2001, because of symptoms she was experiencing from an as yet undiagnosed bipolar disorder. The daughter testified that while at school, she knew that she was suffering from "some sort of . . . a mania" that affected her studies and her ability to concentrate, and caused her to become easily frustrated. Berit related that after the daughter left school and moved back home with her, she suffered from severe mood swings and was difficult to live with as well as disruptive to the household. Neither Berit nor the daughter informed Steeves that the daughter had left college and had returned home to Berit.

---

[3]We decline to give any preclusive effect to the first judge's disbelief, expressed in her judgment against Berit on Steeves's contempt complaint, that Berit had no memory of signing her assent to Steeves's motion to terminate his support obligation, for the following reasons. First, Steeves makes no argument on this point. Additionally, the first judge's statement concerning Berit's credibility was made after a hearing during which, from all that has been made to appear, evidence was not taken. Moreover, the first judge's order establishes that the date of the daughter's emancipation was left to an evidentiary hearing.

Notwithstanding her withdrawal from school and the symptoms she was experiencing, the daughter continued to work, as she had since 1999, as a waitress. She also did research concerning colleges and made inquiries to several of them. In June, 2002, the daughter applied to and was accepted at Northeastern University, for evening part-time studies, scheduled to begin on September 24, 2002. As explained by Berit, the daughter was not capable of maintaining a "full course load" because of her condition. Meanwhile, throughout the period of December, 2001, through October, 2002, Berit endorsed over to the daughter for her sole use all the child support payments made by Steeves.

On September 24, 2002, the enrollment date at Northeastern University, the daughter experienced a serious manic-depressive episode and was hospitalized. Two days later, she was diagnosed as suffering from a bipolar disorder. It was during the daughter's hospitalization that Steeves first learned, from Berit's husband, that the daughter had dropped out of school in December, 2001, and had returned to live with Berit and him. At this time, Steeves was also informed that the daughter wished to live with him upon her discharge from the hospital.

On October 2, 2002, while the daughter was still hospitalized, Steeves went to the hospital and presented to Berit for her signature papers that had been prepared by his attorney and that relieved him of his support obligation on the stated basis that the daughter was twenty-two years of age and emancipated. In a distraught and anxious state about the daughter's condition and believing that the papers were no more than her "authorization for [the daughter] to live with [Steeves]" upon her discharge from the hospital as the daughter requested, Berit signed the papers without consulting an attorney to review and explain them to her. Upon discharge from the hospital, the daughter went to reside with Steeves. However, she returned to Berit's home after nine days. At the time of the evidentiary hearing, the daughter was attempting "to live on her own."

On the facts found by him, the judge accepted Berit's account concerning her assent to Steeves's motion to terminate his support obligation. See note 3, *supra.* He also concluded that the daughter's actions in researching and applying to col-

leges and universities for the 2002 fall semester, when considered in the light of the "special circumstances" of the case, viz., her forced withdrawal from college because of her undiagnosed medical difficulties, established that she was "actively . . . pursuing a college education."

Based on his findings and his interpretation of the pertinent provision of the agreement, the judge concluded that Steeves had not shown that Berit had wilfully disobeyed a clear and unequivocal order of the court.

4. *Discussion.* Whether Berit wilfully disobeyed a clear and unequivocal court order turns on the terms of the agreement with which she was ordered to comply. Put another way, if the terms of the agreement are not clear and unambiguous, neither is the order requiring her to comply with those terms. As stated in *Judge Rotenberg Educ. Center, Inc.* v. *Commissioner of the Dept. of Mental Retardation (No. 1)*, 424 Mass. 430, 442-443 (1997):

> "In order to hold a party in contempt, the judge must find 'a clear and undoubted disobedience of a clear and unequivocal command.' *Warren Gardens Hous. Coop.* v. *Clark*, 420 Mass. 699, 700 (1995), quoting *United Factory Outlet, Inc.* v. *Jay's Stores, Inc.*, 361 Mass. 35, 36 (1972). See *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961). Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt. *United States Time Corp.* v. *G.E.M. of Boston, Inc.*, 345 Mass. 279, 282-283 (1963). The burden of proof in a contempt action is on the complainant to prove its case by a preponderance of the evidence. *Manchester* v. *Department of Envtl. Quality Eng'g*, 381 Mass. 208, 212 (1980). Questions of law, including the judge's interpretation of the settlement agreement, are afforded plenary review, *Warren Gardens Hous. Coop.* v. *Clark, supra* at 701; the judge's ultimate conclusion on the contempt finding is reviewed under the abuse of discretion standard. *Massachusetts Comm'n Against Discrimination* v. *Wattendorf*, 353 Mass. 315, 317 (1967)."

See *O'Connell* v. *Greenwood*, 59 Mass. App. Ct. 147, 149-150 (2003).

The word "emancipation" is generally viewed as a "legal

term of art that relates to the cessation of rights and duties between parent and child." *Eccleston* v. *Bankosky*, 438 Mass. 428, 434 n.13 (2003), citing 1 Kramer, Legal Rights of Children § 15.01, at 655 (2d ed. 1994). Berit and Steeves defined emancipation in their agreement as occurring when the daughter attained eighteen years of age unless the daughter was then "actively pursuing a college education." In that event, emancipation would not occur until she had completed college in the "normal course" or had attained the age of twenty-one, whichever event was last to occur.

Steeves's argument on appeal is that the words of the agreement are clear and free from ambiguity and must be construed in accordance with their usual and ordinary sense. See *Fried* v. *Fried*, 5 Mass. App. Ct. 660, 663 (1977); *Kotler* v. *Spaulding*, 24 Mass. App. Ct. 515, 516-517 (1987). He argues that even if the judge's interpretation of "actively pursuing a college education" were so broad as to comprehend the daughter's search for and applications to schools at which she might successfully seek admission for enrollment in the fall 2002 semester, the judge failed to read the emancipation clause in its entirety. It is Steeves's claim that when the clause is read in its entirety and the words therein used are given their usual and common meaning, the daughter's withdrawal from college during her second year, her failure to attend any school since December, 2001, and her plan to take only two part-time night courses during the 2002 fall semester cannot reasonably be understood to constitute an active pursuit of a college education toward its completion "in the normal course."

We do not think the emancipation clause of the agreement free of ambiguity. As stated in *Bercume* v. *Bercume*, 428 Mass. 635, 641 (1999), a "term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one."

"College" is a word that has not been the subject of extensive analysis in our case law with respect to emancipation. It has been said in other jurisdictions that although the word "college" is ordinarily understood to denote an undergraduate school "having a course of study commonly requiring four years for completion and leading to a bachelor's degree," *In re Kelly's Estate*,

285 N.Y. 139, 141-142 (1941), it is "not a word of art which, by common understanding, has acquired a definite, unchanging significance in the field of education." *Id.* at 141. Rather, "[i]ts meaning varies with its context." *Ibid.* See *Barnard* v. *Barnard*, 214 Conn. 99, 111-112 & n.5 (1990); *Wood* v. *Wood*, 266 Neb. 580, 588-589 (2003); *Epstein* v. *Kuvin*, 25 N.J. Super. 210, 213-214 (App. Div. 1953). Some other jurisdictions hold that the "normal amount of time necessary" to attain an undergraduate degree may be more than four years and that "it is not abnormal for college students to require extra time to attain an undergraduate degree because of . . . illnesses . . . and other reasons." *McDuffie* v. *McDuffie*, 308 S.C. 401, 407-408 (Ct. App. 1992), aff'd in part, rev'd in part on other grounds, 313 S.C. 397 (1993). Cf. *Plath* v. *Plath*, 393 N.W.2d 401, 402-404 (Minn. App. 1986) (appellant obligated to pay college expenses arising during eight semesters of enrollment between 1980 and 1987, a time period that coincided with "the normal progression toward earning" a bachelor's degree).[4] See Webster's Third New Intl. Dictionary 445 (2002).[5]

There is no express language in the agreement before us that required the daughter to maintain a full course load each semester for eight consecutive and uninterrupted semesters or otherwise to complete her college education in four years. Nor is there any evidence of postagreement conduct by the parties to

---

[4]All the above-cited cases are distinguishable from the case before us in various respects. *In re Kelly's Estate, supra,* and *Epstein* v. *Kuvin, supra,* involved claims for the payment of either support or "college" expenses for children who already had received a bachelor's degree, while the *Barnard, Wood, McDuffie,* and *Plath* cases concerned payment of college expenses on an undergraduate level.

[5]Among the several definitions of the word "college" set out in Webster's, *supra,* none of which are time-sensitive, are "an independent institution of higher learning offering a course of general studies and usu. preprofessional training leading to a bachelor's degree" and "an institution offering instruction usu. in a professional, vocational, or technical field." But cf. Webster's Ninth New Collegiate Dictionary 123 (1983) (defining "bachelor" as, among other things, "a person who has received what is usu. the lowest degree conferred by a four-year college, university, or professional school").

Steeves does not argue either that the daughter's programs or courses did not rise to the level of "preprofessional training leading to a bachelor's degree" or that these definitions exclude attendance at junior or community colleges.

show clearly what the emancipation clause of the agreement meant or that they "shared a common understanding of that meaning." *Sax* v. *Sax*, 53 Mass. App. Ct. 765, 772-773 (2002). See *Seaco Ins. Co.* v. *Barbosa*, 435 Mass. 772, 779 (2002) (where contract language ambiguous, intent of parties is question of fact for determination at trial); *Parrish* v. *Parrish*, 30 Mass. App. Ct. 78, 86 (1991) (extrinsic evidence pertaining to background and purpose of parties and their understanding of meaning of particular language may be considered in construing ambiguous contract language); *Haverhill* v. *George Brox, Inc.*, 47 Mass. App. Ct. 717, 720 (1999) (when faced with ambiguity in contract, court must determine meaning from intent of parties based on words in question, entire instrument, and circumstances surrounding agreement).

We also consider the fact that although the first judge found Berit guilty of contempt because she "willfully" failed to notify Steeves that their daughter had "stopp[ed] her college education," there is nothing in the agreement that required Berit to do so. By contrast, the agreement, which provided for joint legal custody of the daughter with physical custody in Berit and "liberal and reasonable rights of visitation" to Steeves, expressly required that Berit notify him of any serious illness of the daughter as well as any plans that she, Berit, might have to leave the country.

In view of the ambiguity in the terms of the parties' agreement, with which the divorce judgment ordered them to comply, and in light of the evidence presented to the second judge, we conclude that Steeves failed to establish by a preponderance of the evidence that Berit disobeyed a clear and unequivocal judicial command.

We need not and do not consider the outer limits of the language of the emancipation clause in respect to Steeves's obligation, if any, to pay child support beyond October, 2002. Rather, our conclusion is limited to the sole question whether Berit violated a clear and unequivocal court order during the period December, 2001, through October, 2002. We emphasize that there is nothing in what we have stated to support a conclusion that a child support obligation provision of a separation

agreement, expressed in clear and unambiguous terms and incorporated into and merged with a judgment, can be construed as indefinitely extending a parent's support obligation well beyond a child's twenty-first birthday.[6]

5. *Remaining claims of error.* In view of the conclusion that we have reached, we need comment only briefly on two of Steeves's contentions that the judge's findings of fact are unsupported by the evidence. First, the fact that the daughter testified that she worked as a waitress during the period immediately following her withdrawal from college in December, 2001, did not preclude the judge from concluding that Berit reasonably could have believed that the daughter was nonetheless actively pursuing her college education by researching and applying to colleges willing to accept her on a part-time basis. Second, and similarly, the fact that the judge erroneously found that the daughter applied to Northeastern University in "early 2002" as opposed to June, 2002, does not require that we reach a conclusion different from what we have.

As for Steeves's claim that the judge abused his discretion and erred, as matter of law, in denying his motion for attorney's fees, we think we need say no more than that based on our conclusions of law, the circumstances presented, and the argu-

---

[6]General Laws c. 208, § 28, inserted by St. 1991, c. 173, § 1, provides in relevant part:

> "The court may make appropriate orders of maintenance, support and education for any child who has attained age twenty-one but who has not attained age twenty-three, if such child is domiciled in the home of a parent, and is principally dependent upon said parent for maintenance due to the enrollment of such child in an educational program, excluding educational costs beyond an undergraduate degree."

In view of the manner in which this case has been presented and argued, and in light of the decision we reach with respect to Steeves's argument in respect to the provisions of the agreement, we have no need to address his terse and conclusory assertions, even if constituting argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), that he was under no statutory obligation to support his daughter for the period in question. Compare *Kotler* v. *Spaulding*, 24 Mass. App. Ct. at 517-519 (judge acting on own initiative to make orders relative to child's maintenance, support, and education limited by provisions of G. L. c. 208, § 28, whereas parties may, by mutual assent, provide for support beyond scope of § 28).

ments made, we perceive no reason to disturb the judge's denial of Steeves's request for counsel fees.

*Amended judgment of contempt affirmed.*