[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Jonathan Solomon, commenced this action for dissolution of his marriage to the defendant, Nancy Allen, by writ, summons and complaint, dated November 24, 1992. The defendant filed her answer and cross-complaint on April 28, 1993.
After a full trial, the parties present and represented by counsel, based upon a preponderance of the credible, relevant and legally admissible evidence, the court finds, concludes, rules and enters its awards as follows:
The plaintiff and the defendant whose maiden name was CT Page 3052 Nancy Allen, intermarried on September 2, 1990 at New York City, New York.
One of the parties has resided continuously in the State of Connecticut for at least one year prior to this action.
There is one minor child, legal issue of the marriage, namely, Claire Marie Solomon, who was born July 20, 1992.
No other minor children have been born to the defendant since the date of this marriage.
No party to this action is receiving aid from any governmental agency.
The marriage of the parties has broken down irretrievably.
The plaintiff is 37 years old and has been continuously employed in the computer field since his graduation from Brandeis University in 1978. He is in excellent health. In 1989, before the parties were married, they were living together and the plaintiff was employed by Cadcraft in Old Saybrook, Connecticut. The plaintiff held an ownership interest in this company. During the summer of 1990, the plaintiff was offered a position with a company, now know as Softdesk, in New Hampshire. As part of the transaction, the plaintiff was to receive an option for 600 shares of Softdesk stock. He consulted with the defendant, with whom he was then living, and both agreed that he should accept the position. The parties married a short time after he accepted this employment. (The original 600 shares of Softdesk went through two ten for one stock splits and are now 60,000 shares).
On December 2, 1991, approximately 18 months after he commenced his employment and exactly 15 months after the parties were married, the plaintiff, after discussing his actions with the defendant who concurred with his decision, executed a stock option agreement with Softdesk whereby he acquired the right to purchase up to 6,000 shares of Softdesk at no additional financial contribution by him. Paragraph 3 of the option agreement state in part: ". . . the Company will deliver to you stock certificates for the number of shares you have acquired; issued in your name or, at your option, in your name and another person's name as joint tenants." (Emphasis added). CT Page 3053
On February 12, 1992, the plaintiff sent a letter to Softdesk exercising this option and expressly and specifically, without reservation or qualification, directing that the stock be issued in his name and his wife's name, as joint tenants. At that time the defendant was pregnant with the parties child.
The parties discussed the exercise of this option prior to the letter of February 12, 1992 and the defendant was aware of the plaintiff's intent that this stock be issued jointly in their names. Both parties, intended, understood and expected that the stock would be issued jointly. Both parties understood and expected that Softdesk would comply with the written instructions, and no further instruction to the contrary were given by the plaintiff to Softdesk.
At some later date, the plaintiff discovered that, contrary to his instructions to Softdesk, the stock had not been issued jointly but had been issued in his name alone, which fact he concealed from the defendant.
This matter proceeded to trial on January 6, 1994 at which time the plaintiff submitted a financial affidavit to the court showing 6,000 shares of Softdesk stock, valued at $6,000.00. This affidavit was amended in writing at the commencement of trial to reflect a 10 for 1 stock split which had previously occurred and which resulted in an increase to 60,000 shares, which were still valued by the plaintiff at $6,000.00. The defendants financial affidavit of January 6, 1994, also listed the same 6,000 shares of Softdesk at a value unknown.
The defendant was unaware of the 10 to 1 stock split resulting in the 60,000 shares shown on the plaintiffs' amended financial affidavit of January 6, 1994, until that information was conveyed at the start of the trial.
On February 17, 1994, during the course of the trial of this case, a public offering of 2,300,000 shares of Softdesk stock, including 10,800 of the 60,000 shares, was effectuated on the NASDAQ Stock Exchange. The 10,800 shares were sold at a gross price of 11.50 per share, resulting in net proceeds, after underwriting discount, of $115,506.00. By agreement of the parties, this amount is presently held in escrow by plaintiff's attorney.
There remains a total of 49,200 of the shares which cannot CT Page 3054 be disposed of, pursuant to the terms of the public offering statement, until August 17, 1994. On February 25, 1994, this stock was trading on the NASDAQ exchange at 16.25 per share.
The court attributes the entire fault for the breakdown of this marriage to the plaintiff husband. His reluctance and hesitation before the marriage, his early disenchantment after the marriage, his adulterous relationship during his wifes [wife's] pregnancy and his abandonment of his family shortly after his daughters' birth clearly indicates to the court that he bears the onus for the failure of this marriage.
Both parties are well educated, hard working and talented individuals. Both are outstanding and highly successful in their careers. The defendant is a harpist with an international reputation. She is head of the harp department at both the Juillard School and Yale University. She performs internationally and has numerous recordings of her work. She is also in good health and earns approximately $65,300 per year.
The plaintiffs talents and career were outlined above. His financial affidavit indicates an income of approximately $60,000 per year.
The parties purchased property at 11 Clinton Avenue in Old Saybrook, Connecticut before their marriage. The premises are highly encumbered with very small equity value. The parties have other assets including bank accounts, stock and personal property which shall be enumerated below.
Obviously, the major asset to be considered are the Softdesk shares. Although the plaintiff claims full ownership, his actions and the circumstances surrounding said stock belie such a stance.
This court expressly finds that by letter dated February 12, 1992, the plaintiff made an unqualified, irrevocable and absolute gift of one-half the value of said shares when he exercised his option and ordered and instructed Softdesk to issue said shares jointly in both his name and the defendants. The fact that Softdesk, inadvertantly [inadvertently] or otherwise failed to follow the plaintiffs instructions cannot defeat the completed gift. It would be bizarre to conclude that a gift between two parties could be defeated by the actions of a third party who has no interest, relationship or responsibility in the donative CT Page 3055 process except to follow the instructions of the optioner/donor given pursuant to the option agreement.
It is established law that a completed gift is irrevocable. Manyek v. Manyek, 29 Conn. Sup. 1 (1970). "A gift is a transfer of property without consideration." Guinan's Appeal, 70 Conn. 342,347. To make valid inter vivos gift, the donor must part with control of the property which is the subject of the gift with an intent that title shall pass immediately and irrevocably to the donee. Burbank v. Stevens, 104 Conn. 17, 22; Meriden Trust and Savings Deposit Company v. Miller, 88 Conn. 157. The burden of proving the essential elements of a valid gift rests upon the party claiming the gift. Nogga v. Savings Bank,79 Conn. 425, 426. "A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be made." Meriden Trust and Savings Deposit Company v. Miller, supra, 162; D.M. Read Company v. American Bank Trust Company, 110 Conn. 461,462. The intent of the donor is the determinative factor. Intent raises an issue of fact. Flynn v. Hinsley, 142 Conn. 257,262; Driscoll v. Norwich Savings Society, 139 Conn. 346,349.
The plaintiff testified that when he instructed Softdesk by letter dated February 12, 1992, he inequivocally intended that the stock which was the subject of the option agreement be issued jointly to him and his wife.
General Statute Section 42a-8-314, entitled "Duty to Transfer, When Completed" states in part: "(I) Unless otherwise agreed, if a sale (gift) of a security is made on an exchange or otherwise, through brokers (a) the selling customer (donor) fulfills his duty to transfer at the time he (or she). . (iv) places in the possession of the selling broker or a person designated by the broker a transfer instructions."
General Statute 42a-8-308 entitled "Endorsements; Instructions" defines an "instruction" as an order to the issuer to transfer or register the securities as directed in writing.
Since the plaintiff did not have the stock in his possession he did all that was required of him to do to complete the gift. He physically could not deliver the shares. The failure of Softdeck [Softdesk] to follow his specific instructions cannot defeat the plaintiff intent to make a gift and cannot deprive the defendant's CT Page 3056 ownership interest as donee.
In fact, General Statute 42a-8-404(2) provides that where the issuer fails to follow the written instructions of the seller/donor, the donee may bring an action to require the issuer to reissue the stock in accordance with the instructions given.
The court finds as a question of fact that the Plaintiff intended to and in fact made and completed an irrevocable inter vivos gift of a joint interest in the Softdesk stock to the defendant, when, by letter dated February 12, 1992, he instructed the issuance of the stock jointly to him and the defendant and concludes as a matter of law that the plaintiff and the defendant are joint owners of the remaining 49,200 shares of stock and the $115,506.00 proceeds of the sale of jointly owned stock, which funds are at present being held in escrow by the plaintiffs' attorney.
The custody of the minor child, Claire Marie Solomon is awarded to the defendant, subject at this time to reasonable right of visitation to the plaintiff. The child is less than two years old at the present time and is presently in the process of being weaned. When the process is completed and the child is a few months older, reasonable visitation should include overnight visits. The court is confident from its hearing the parties that the defendant will encourage and foster a strong, loving relationship between the child and her father. If the parties fail to accommodate each other, and fail to work out a visitation program mutually satisfactory to them and in the best interest of the child, the visitation will be reviewed in six months to establish a specific visitation schedule.
The plaintiff is to pay child support in the amount of $180.00 per week. The defendant is to maintain health insurance for the minor child as is presently available through her employment at Yale University. In the event that this health insurance is no longer available to the defendant, the plaintiff is to provide and maintain health and hospitalization insurance for the minor child. The parties are to divide equally the cost of all uninsured and unreimbursed medical, dental, orthodontist and counseling expenses for the minor child.
The plaintiff is to maintain his presently existing life insurance shown on his financial affidavit of February 25, 1992 CT Page 3057 in the amount of $25,000.00 naming the minor child, Claire as irrevocable beneficiary.
Applying the criteria mandated by General Statutes Section46b-81 and 46b-82 the court makes the following distributions and awards.
The plaintiff is ordered forthwith to transfer and deliver to the defendant 24,600 shares of Softdesk stock.
The defendant is to quitclaim her right title and interest in the premises at 11 Clinton Avenue, Old Saybrook, to the plaintiff who is to be responsible for all payments of mortgages, taxes, insurance, liens or any other encumbrances and shall hold harmless the defendant from any liability of same. If he sells the premises any net proceeds therefrom shall be his alone free and clear of any claims by the defendant.
This court distributes the escrow account of $115,506.00 as follows: The plaintiff's attorney, as escrow agent is to distribute to the defendant the sum of $67,753.00 and to the plaintiff the sum of $47,753.00 with any interest accumulated thereon to be distributed in the same proportion. The intent of the court is to reimburse the defendant for her contribution to the real estate and the transfer of any equity therein.
The following assets are to be the sole property of the plaintiff: Concord Savings Account, approximate balance of $300.00; 401K retirement plan approximate balance of $10,000.00; Maine Sale approximate balance of $5,000.00; 100 shares of CAD Craft stock approximate balance of $2,000.00; and, 1982 Mercedes Benz automobile approximate value of $2,000, to be his free and clear from all claims of the defendant.
The following assets are to be the sole property of the defendant: Chase Manhattan Bank Account approximate balance of $23,000.00; the TIAA CREF retirement account approximate value of $34,000.00 and her harps and personal property located at 111 [11] Clinton Street or her apartment in Manhattan.
The following joint assets of the parties shall be divided equally between them: Liberty Bank checking account, approximate balance of $500.00; People's Bank checking account approximate balance of $7,100.00; People's Bank savings account approximate balance of $2,000.00; and the Schwab account approximate balance CT Page 3058 of $23,352.00.
The court makes no award of alimony to either party and rules that each party pay their own counsel fees and their own debts as shown in Section 3 "Liabilities" on their respective financial affidavits.
A decree may enter on the defendants' cross-complaint, dissolving the marriage, and incorporating therein the above findings, conclusions, distributions and awards, without costs
SPALLONE STATE TRIAL REFEREE
Judgment Entered in Accordance with Foregoing Memorandum of Decision.
Michael Kokoszka, Chief Clerk