[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 12929
STATEMENT OF THE CASE
The plaintiff in this action claims to be the owner of a 1970 Corvette, also claimed by the defendant as property of the Estate of Ernest C. Marchitto, deceased. Both the plaintiff and the defendant are sons of the decedent. The vehicle in question was purchased for and used exclusively by a third son, Richard Marchitto, also deceased.
While the plaintiff claims to have made the actual purchase and provided it to his brother Richard, the defendant claims that it was the elder Marchitto who provided the money and paid for its insurance, taxes, and repairs. The parties have introduced 71 exhibits, many in multi-parts, to support their allegations.
APPLICABLE LAW
This being a claim against a decedent's estate, the plaintiff was the burden to present "clear and satisfactory" proof of its claim. Flynn v. Hinsley, 142 Conn. 257, 262 (1955). In so doing, he must rely on the strength of his title rather than on the weakness of the defendant's title. Robinson v. Adderbury,135 Conn. 517, 519 (1949).
Where, as here, the ownership or a motor vehicle is in question, the registration is not conclusive on the issue but must be considered along with other evidence. This "other evidence" includes evidence or payment for the vehicle, evidence of payment of repairs and equipment, payment of taxes and insurance, possession and control. Burakowski v. Grustas,34 Conn. 205, 206-209 (1947).
 I
Examining into the purchase of this vehicle, it is necessary to consider the total circumstances surrounding the acquisition. Its express purpose was to provide a car to Richard, the youngest brother, who at age 16 was diagnosed as having a serious malignant tumor. Its removal involved radical surgery and left him permanently disabled and lacking his left arm.
The car originally purchased for Richard "to help" him as he prepared for this surgery was a Pontiac. Though the plaintiff CT Page 12930 claims he purchased the Pontiac, the bill of sale was made out in the name of the decedent, Ernest C. Marchitto, at the latter's address. The title was also issued to the older Marchitto, on his application for registration. The plaintiff's explanation for this procedure was that it was "done for tax and insurance reasons."
This transaction is significant because the Pontiac was then, immediately after the surgery, traded in for a 1966 Corvette. The plaintiff claims to have paid $300 in addition to the trade in. This car was soon totalled by Richard, and the plaintiff stated that he paid for its repair and had paid for taxes and insurance on it.
Finally, this repaired vehicle was replaced by the vehicle in dispute. The plaintiff claims the decedent Ernest C. Marchitto was not involved in the purchase. The sale invoice is made out to "Ernie Marchitto" at the plaintiff's Wallingford address. The Certificate of Title (Exhibit R) however, raises some questions.
It bears the name of and is signed by "Ernest Marchitto Sr." One would expect that to refer to the decedent, the father of the plaintiff, Ernest P. Marchitto. And, the "Registration Certificate" (Exhibit 3) from which the Certificate of Title is obtained bears the date or birth of the decedent. However, the address used is that of this plaintiff, who testified that he is Ernest Marchitto Sr. One wonders then why he used his father's date of birth on the Registration Certificate. The situation is further confused by the fact that the Certificate of Title has obviously been tampered with and the plaintiff's date of birth written over the decedent's date of birth. The Certificate of Title was offered by the plaintiff and marked Exhibit R, the Registration Certificate by the defendant as Exhibit 3.
This tampering can be verified by reference to Exhibit O, a photocopy of Exhibit 3, obtained apparently by the plaintiff from the motor vehicle department. This is the "title copy" from those files and depicts Exhibit R as it was issued.
There has also been an alteration of another plaintiff's exhibit, Exhibit P. This carbon copy of an "Agreement To Provide Insurance" has had an erasure on the address line under "Ernest Marchitto Sr.", actually tearing the paper, with the plaintiff's address printed over the smudged erasure. CT Page 12931
The Court finds it significant that though the plaintiff claims to be "Ernest Marchitto Sr.", his name does not appear on the Wallingford Tax Rolls in that way for 1969 or 1970. In fact, the entries for those years relating to the 1966 Corvette which was totalled are for "Ernest P. Marchitto."
On the 1971 rolls, there are five entries containing this plaintiff's name and only the entry derived from the Registration Certificate referred to above bears a "senior." The defendant placed in evidence Exhibit 26, an advertising flyer relating to the approaching 1977 retirement of the decedent from the family business. Part of the flyer purports to be signed by "Ernest P. Marchitto Jr." — this plaintiff. In it, he refers to his father as "Ernie Sr.", whose photo appears over a caption "Ernie Sr."
The Court finds that the plaintiff did not purchase this vehicle with his funds and that he was not "Ernest Marchitto Sr."
 II
The Court has examined the other evidence offered by the parties and has prepared a summation of the payments and documents. It must be noted that until March 1, 1977, the decedent and the plaintiff operated the business known as the Hamden Upholstery Furniture Shop. The decedent retired from the business on that date pursuant to an agreement between him and the plaintiff.
 A.
The defendant has produced registrations for this vehicle for the years 1972-1981 and 1988. All show the owner-registrant to be Ernest Marchitto Sr. Save for 1972, his address is listed as 53 Cassella Drive in Hamden, the decedent's residence, the address where the car was garaged, and the residence of the user, Richard Marchitto. The 1972 registration shows Ernest Marchitto Sr. at the plaintiff's Wallingford address, but a change to 53 Cassella Drive appears on the reverse side.
The registration fees were paid by checks drawn on the Hamden Upholstery Furniture account for 1975 and 1976. These checks also paid for other vehicles, including the decedent's. For 1977-79, the fees were paid by checks from the decedent's personal account. CT Page 12932
In 1984, the plaintiff paid a motor vehicle fee with a business check. The designation of this car's license plate number on the reverse side suggests it was for this car.
 B.
Turning to the payment of insurance premiums, the defendant produced policies for various dates between 1973 and 1986. Payment was by the decedent's personal check for 1976-80 and 1986 and by business checks for 1970 and 1977.
The plaintiff presented policies for 1990-91, but like some of his title and registration evidence, this was produced after the decedent's death or after the present disagreement became apparent.
 C.
The plaintiff produced evidence of Richard's vehicles being charged to him on local tax rolls for 1969-71. The defendant produced tax rolls from 1974-80 and 1986. The decedent's personal checks paying taxes were produced for 1977-81 and 1987. Business checks paid the taxes on this vehicle for 1974 and 1975 and included vehicles of the decedent and others.
The plaintiff produced proof of appearance on the tax rolls from 1989-94, after the dispute surfaced.
 D.
As for car repairs, between 1970 and 1976, four checks were produced showing business checks used to pay for bills on the Corvette. In 1984, the plaintiff's business check paid a bill.
 E.
From the evidence summarized above and the testimony elicited at trial, the Court concludes that the plaintiff has not presented clear and satisfactory proof that he is the owner of the vehicle. In fact, the defendant was proved the contrary by clear and convincing evidence and was in fact convinced the Court that the decedent paid for the vehicle in question and paid the taxes, insurance, registration fees, and some of the repairs. The indicia of ownership on the defendant's side far outweigh those offered by the plaintiff. CT Page 12933
 III
The defendant filed a Notice of Serving Request for Admissions and Request for Admissions with the Court on May 3, 1995. The plaintiff neglected to respond to the same. The Court finds the defendant's requests admitted.
CONCLUSION
The Court will not address the damages issue in view of its findings above. Judgment may enter for the defendant.
Anthony V. DeMayo State Trial Referee