CHRISTINA A. DUTRA *vs.* ANTHONY E. DAVIS, *Admr.*

JULY 17, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. This case is before us on the exception of Mary P. Faria, a party in interest, to a decision by a jus-

tice of the superior court, sitting without a jury, that a certain paper, dated July 6, 1940, was the last will and testament of Christina Evangelho, late of East Providence, deceased. It was heard in the superior court on an appeal from a decree of the probate court refusing to probate the instrument in question as a will.

Christina Evangelho was over eighty years old when she died on July 2, 1941, leaving three daughters and two sons. Mary P. Faria and Christina A. Dutra are the only children of the deceased who are parties in this case.

Excepting the signatures, the day of the month of execution and two interlinings with substitutions, all of which are in ink, the paper in question, which we will hereinafter call the "instrument" is typewritten; it has a line for the signature of only one witness, and it bears a seal. It was prepared by Michael Pedro, an experienced member of this bar, who did not testify because of serious illness. The executed instrument is as follows:

"Memorandum

I, Christina Evangelho, of the City of Providence, County of Providence, State of Rhode Island, in consideration of One Dollar and other lawful considerations, request that upon my death a Mortgage held and owned by me and executed by Manuel G. Dutra and Christina A. Dutra on August 15, 1934, for the sum of ($2,400.00), which Mortgage is recorded in Book No. 105, Page 339, in the Office of the Town Clerk, Town of East Providence, Rhode Island, be declared void and may be discharged forthwith by my Executor or Administrator.

I do this because of the love and affection I have for my daughter, Christina A. Dutra, and the fact that she agrees to pay the expenses of my last illness and funeral expenses.

Witness my hand and seal this 6th day of July, 1940.

Witness to mark            her
    of C. E.                 Christina (X) Evangelho
Anthony E. Davis            mark
Mariana Vincent"

Anthony E. Davis was appointed administrator of decedent's estate under circumstances that will appear later. He testified that he was accustomed to visit the deceased while she was living with Mrs. Dutra; that, on one of these visits, the deceased asked him to have her lawyer, Pedro, draw a will for her; that she then told him that, sometime previously, she had entered into an agreement with her daughter, Mrs. Dutra, whereby the latter was to take care of her for the rest of her life and pay the expenses of her last illness and funeral, and that, if the daughter carried out her part of the agreement, she, the mother, was to see to it that upon her death the mortgage which she held on her daughter's property was voided and discharged; and that he, Davis, conveyed all this information to Pedro, who shortly thereafter gave him the instrument under consideration.

Davis further testified that the instrument was executed in July 1940 at the home of Mrs. Dutra and in her absence; that he first read it to Christina Evangelho in English and then translated it into Portuguese, which was her native language; that she signed it and declared it as her last will and testament in the presence of himself and of Mariana Vincent, who was working at the Dutra home on that day; that it was then signed by him and Mrs. Vincent as witnesses; that, following its execution, Christina Evangelho gave it to him for safekeeping; and that it had remained in his possession until it was filed for probate, which was on July 24, 1942. The general tenor of Mrs. Vincent's testimony in reference to the execution of the instrument is to the same effect as that of Davis. The credibility of both Davis and Mrs. Vincent was attacked by testimony on collateral matters.

Mrs. Dutra testified that, on the same day that the instrument was executed, her mother told her that she had made a will; that it was in Davis's possession and that he would give it to her when she, the mother, died. As to the existence of an agreement with her mother, she testified

as follows: "Q. Did you make any agreement with your mother in the spring of 1940? A. My mother came there (meaning at her house) to stay, and she said she wanted me to take care of her while she lived, until her death, and pay her bills. After that, she agreed to make a will out to me and leave the mortgage on my home to me. Q. You were to take care of her for her life? A. That's right. Q. And pay her funeral bills? A. That's right, and other expenses, if any."

The evidence shows that shortly after the mother's death, Mrs. Dutra and Davis went to Pedro's office for advice. It is not clear whether they consulted Pedro in person or by telephone at his home, where he was confined by illness. However, Pedro's secretary, after talking with him, prepared a petition asking that Mrs. Dutra be appointed administratrix of her mother's estate. This petition, which alleges that Christina Evangelho died intestate, was signed and sworn to by Mrs. Dutra before Davis, as notary public. It was duly filed in the probate court and assigned for hearing on August 11, 1941. In the meantime, Mrs. Faria filed a similar petition asking that she be appointed administratrix. The two petitions just mentioned were heard together by the probate court.

On the day of the hearing Mrs. Dutra and Davis first went to Pedro's office where they met Charles M. Robinson, also an experienced member of this bar, who was apparently substituting for Pedro in the matter during the latter's illness. Neither one gave that attorney any information respecting the instrument. Mrs. Dutra testified that she merely saw Davis showing the instrument to him. Davis testified that he handed the instrument to Robinson, without any statement in reference thereto; that Robinson read it and returned it to him without comment; and that he thereafter retained it in his possession until it was presented for probate by Mrs. Dutra as a will.

The instrument was not mentioned at the hearing on the two above-mentioned petitions for administration. The

hearing resulted in the appointment of Davis as administrator, who thereafter duly qualified and is now acting in that capacity.

On July 14, 1942, almost a year after Davis was appointed administrator, Mrs. Dutra filed a petition in the probate court asking that the instrument be admitted to probate as the last will and testament of her mother. This petition was heard on August 10, 1942 and on September 14, 1942, the probate court, in a written decision, held that the instrument was not the last will and testament of Christina Evangelho. While Mrs. Dutra appealed from this decision to the superior court, Davis, as administrator, on September 25, 1942, filed a petition in the probate court for leave to discharge the mortgage described in the instrument, without in any way referring to the instrument itself. The matter was heard on October 20, 1942, and held for decision by the probate court.

Mrs. Faria contends that her mother intended the instrument to operate as a memorandum of the oral contract between her mother and Mrs. Dutra and not as a will. In support of this contention she relies upon the following main points: (1) The form and language of the instrument; (2) the fact that the instrument was prepared by an experienced lawyer and not by a lay person ignorant of the law; (3) the failure of Davis and Mrs. Dutra to disclose to attorney Robinson that the deceased had declared to them that the instrument was her last will and testament; (4) the administration proceedings and the general conduct of both Mrs. Dutra and Davis in reference to the instrument until it was offered for probate as a will.

The rescript of the trial justice shows that, in arriving at his conclusion, he confined his consideration of the evidence to the testimony of Davis and Mrs. Vincent in relating to the execution of the instrument and to only certain characteristics of the instrument itself. Because of that testimony and because "the instrument did not vest *in praesenti* any interest in any person", he therefore held that Christina

Evangelho intended the instrument as a will as she "made a disposition of her property to take effect on her death, and with all the formalities necessary in the case of a will." In our judgment, the trial justice was clearly wrong in thus restricting his consideration of the evidence, thereby overlooking other competent evidence that had a material bearing on the controlling question in the case.

The question whether the instrument is testamentary or contractual is to be decided on a fair consideration of every provision of the instrument and in the light of all pertinent facts in evidence, which, directly or by reasonable inference, tend to establish its true character. It is undisputed that, prior to the date of the instrument, Mrs. Dutra and her mother had entered into the oral agreement hereinbefore mentioned. The fact that Mrs. Dutra was to be compensated for the due performance of that agreement by the discharge of a mortgage upon the mother's death did not affect the validity of the agreement. But, since the agreement was oral and payment thereunder was to be made to Mrs. Dutra by the release of almost all of the mother's estate, which, considering her advanced age, might greatly exceed Mrs. Dutra's total expenses under the agreement, it is reasonable to infer that Mrs. Dutra wanted something in writing from her mother in order to avoid complications after the mother's death. These considerations have some bearing and should not have been overlooked in determining the real character of the instrument.

The title, form and language of the instrument is not that of a will but rather that of contract. It is entitled "Memorandum"; it bases the obligation on a "consideration of One Dollar and other lawful considerations"; it specifically mentions an agreement with Mrs. Dutra; and, as originally written, it indicated a place for the signature of only one witness. The reference to "love and affection" is consistent with a desire on the part of the mother to explain away any great disparity between the amount of Mrs. Dutra's expenditures and the $2400 of the mortgage. The instru-

ment contains no words that are usually employed in making a testamentary gift. Furthermore, "the executor or administrator" is merely requested to discharge the mortgage, and no person is named to act in either of those capacities. We cannot believe that if Davis had been instructed to have attorney Pedro draw a will for the deceased and had informed him of such a request, as Davis testified in the instant case, that Pedro or any other attorney would have drafted such an instrument as a will.

The conduct of both Davis and Mrs. Dutra after the death of the latter's mother is not consistent with their claim in this case. It is significant that in the petition for the appointment of herself as administratrix Mrs. Dutra, with the advice of attorney Pedro who drew the instrument, represented that her mother had died intestate. Nor can we overlook the manner in which both Davis and Mrs. Dutra dealt with the instrument in their consultation with attorney Robinson shortly before the hearing in the probate court on the petitions for administration. The fact that Robinson was merely shown the instrument without a word of explanation as to what it meant to them tends to cast serious doubt upon their testimony in this case respecting the character of the instrument. We are at a loss to understand why Davis then failed to disclose to Robinson the circumstances under which the instrument was executed, and why Mrs. Dutra at that time did not at least tell him that her mother had stated to her that the instrument in Davis's possession was her will.

Furthermore, the fact that Mrs. Dutra, who had the advice and assistance of competent counsel, allowed the estate to be administered by an administrator without challenge for almost a year is in clear opposition to her present claim. Whatever the instrument may otherwise be, a careful consideration of all the evidence and the reasonable inferences therefrom lead us to the conclusion that Christina Evangelho did not intend the instrument to operate as her last will and testament.

The exception of Mary P. Faria is sustained and the case is remitted to the superior court for the entry of a decree affirming the decree of the probate court appealed from.

*James H. Kiernan, Sidney L. Rabinowitz,* for Mary P. Faria.

*John C. McOsker,* for Christina A. Dutra.