MARY E. WYATT *vs.* MICHAEL H. MORAN *et al.*

MARCH 26, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a bill in equity to establish owner-ship in the complainant by way of a gift *inter vivos* of a joint bank account standing in the names of Joseph F. Moran or Mary E. Wyatt and payable to either or to the survivor. Hereinafter the former will be referred to mostly as Joseph and the latter as the claimant. Joseph died un-married and intestate on March 1, 1949 in the town of East Providence in this state. The respondents include his heirs-at-law together with the coadministrators of his estate. The cause was heard in the superior court on bill, answer and proof, and thereupon a decree was entered denying and dismissing the bill. The claimant has duly appealed to this court from that decree mainly on the ground that it is against the evidence and the weight thereof.

Omitting reference to incidental details, the evidence is practically undisputed and comes almost entirely from the claimant, her son Russell C. Wyatt, and Gladys Smith, a neighbor of Joseph in the later years of his life. The claim-ant is the eldest sister of Joseph, who for many years was employed as a waiter in Boston in the commonwealth of Massachusetts, and in other cities in this country. Up to about 1938, after which time he lived with his sister for approximately two years, he stayed at her home week ends and for other short periods whenever he returned to Rhode Island. Four canceled bankbooks in the joint names of himself and claimant or in his name as trustee for her were found at the time of his death. Another bankbook, which is the one in question here, was found on his person. These show that it was his custom to deposit his savings regularly in such form with banks of the various cities where he was employed for any extended period of time.

In February 1918 Joseph opened joint account No. 205826 with the Providence Institution for Savings in the names

of himself and claimant. She deposited $200 of her own money in that account and withdrawals were made therefrom by each at different times. It was closed by Joseph on March 5, 1941, the money apparently being used by him to build a small house where he subsequently lived alone until he died. The reason for leaving his sister's home where, as stated, he had lived for two years is not clear. There is evidence to the effect that it was the result of a disagreement with claimant's son Russell, who denied the occurrence of any such incident.

In October 1944 Joseph opened the disputed joint account No. 443160 with the above-mentioned Providence bank in the names of himself and claimant, and payable to either or to the survivor. It is undisputed by claimant that she deposited no money of her own in this account; that she made no withdrawals therefrom; and that the bankbook relating thereto was found "on Joseph Moran's person" when he died.

There are in evidence certain statements attributed to Joseph upon which claimant strongly relies as proof of his intention to make a gift *inter vivos* to her of such account. Because of advanced age and failing health she testified by deposition, which plainly showed a confusion of mind, failure of recollection, and inability to identify with any degree of certainty the particular account to which she was referring. However, construing her testimony most liberally in her favor, the most we can gather therefrom is that when Joseph asked her to sign the signature card in connection with that account he told her that "he opened an account in my name and in his, and if I ever needed any money, why I could draw it." The claimant's son Russell testified that when his mother came home from a hospital in 1947 Joseph asked "if I wanted the book to pay the hospital bill," to which he replied that he and his brothers were going to pay the bill.

Gladys Smith, who lived on premises adjoining Joseph's

home, testified that sometime in 1941, having observed that he was building his house piecemeal, she asked him why he did not get a mortgage and have a contractor build it for him. His answer, as stated by her, was that he did not want a mortgage "so he used the money in the bank in his sister's name and his name"; that she "was letting him use it"; and that "he would put it back later on." We note that these alleged statements by Joseph clearly referred to joint account No. 205826 which he closed in 1941.

Gladys Smith further testified that shortly before Joseph's death he told her that he was not feeling well and if he should die she was to notify his sister Mary Wyatt. Such statements led her to ask him if he had a will, to which query he replied that he did not need a will as "he had a house that would take care of his burial and then his sister and him had a bank account they shared fifty-fifty since his mother died."

In this class of cases it is well settled that a claimant has the burden of establishing a gift *inter vivos* by clear and satisfactory evidence. *Carr* v. *MacDonald,* 70 R. I. 65; *Old Colony Co-operative Bank* v. *Burger,* 63 R. I. 223. He must establish by such degree of proof that the donor intended, *in praesenti,* to divest himself of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership and control jointly in the claimant. In other words, such gift must be fully executed and go into immediate and present effect. *Tabor* v. *Tabor,* 73 R. I. 491; *Weber* v. *Harkins,* 65 R. I. 53; *People's Savings Bank* v. *Rynn,* 57 R. I. 411; *Raferty* v. *Reilly,* 41 R. I. 47. If the transaction in question was to take effect only after the death of the donor, then under the well-settled law it is a testamentary disposition and not a gift *inter vivos. McCartin* v. *Devine,* 66 R. I. 100, 103; *People's Savings Bank* v. *Rynn, supra.*

The claimant contends that the trial justice misconceived the true meaning of the evidence in the instant cause and

therefore reached an erroneous conclusion. She argues that he overlooked and failed to give proper consideration to the testimony of her son Russell and especially to that of Gladys Smith which, according to her contention, was "consistent only with an intent to make a completed gift in praesenti and inter vivos." She further points out that since 1918 Joseph had a number of bank accounts jointly with her or in his name as trustee for her, and that there was "no evidence direct or indirect that it was done for convenience or solely for the purpose of effecting disposition of the fund on the death of Moran." Summarily stated, her contention is that the evidence admits of only *one* conclusion; that the decision of the trial justice was based on unwarranted inferences; and that in such a situation this court should give no weight thereto.

We cannot agree with claimant that the evidence in the present record is of the force or character attributed to it by her. The testimony of her son and of Gladys Smith was open to considerations of possible misunderstanding, inaccuracy of recollection, and the meaning reasonably to be given to their respective statements in the light of all the circumstances in evidence. The facts that the bankbook in dispute, as in previous instances, was in the joint names of Joseph and claimant or that at times it may have been in the possession of one or the other are matters of importance and deserve due consideration in arriving at an ultimate decision, but such facts are not in themselves conclusive or controlling. *Millman* v. *Streeter*, 66 R. I. 341, 350; *Tabor* v. *Tabor, supra.* A present donative intent may be denied by the attendant circumstances.

Furthermore, even though the testimony of claimant's son and of Gladys Smith was undisputed, the trial justice was not obliged to accept it as true or to accord to it the weight for which she contends. On a comprehensive view of all the evidence of record, it was his duty to consider the credibility of that testimony and to determine its real probative

value when related to the other proven facts. In a case where, as here, the property of a deceased person is in dispute, the testimony of witnesses with reference to his donative intent demands the closest scrutiny. *Carr* v. *MacDonald, supra.* After consideration we are of the opinion that the evidence here is clearly open to interpretations that may reasonably lead to different and opposite conclusions.

The rescript in this case shows that the trial justice did not overlook or misconceive any material evidence, as claimant argues. The real basis for the difference between her interpretation of the evidence and that of the trial justice lies in the weight that, among other things, he gave to the testimony of Russell and of Gladys Smith when considered in connection with Joseph's acts and conduct over the years. In the opinion of the trial justice "they gave no persuasive testimony that dealt with any statement of the decedent with regard to the opening of the account or of his intentions in regard thereto." As the evidence was reasonably open to such interpretation we cannot say that his decision was clearly wrong.

It is also clear from the rescript that he applied the correct rule of law to the facts as construed by him. Upon consideration of all the evidence his conclusion was that "Joseph F. Moran did not in his lifetime intend to and, in fact, did not make a completed gift to the complainant of an interest in the said bank account No. 443160 as alleged and claimed by her." From our examination of all the evidence, which we have found plainly open to different interpretations, we cannot say that the decision of the trial justice was unreasonable or clearly wrong, and this is particularly true since complainant here had the burden of establishing the alleged gift *inter vivos* by clear and satisfactory evidence.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Everett D. Higgins,* for complainant.

*Coffey, Ward, Hoban & McGovern, Charles J. McGovern,* for respondents Michael Moran and Henry Kearns, *John G. Coffey* and *Irving Brodsky,* coadministrators, *pro se.*