G. CHANDLER BEALS, *Executor vs.* GLORIA DIONNE LORD.

JULY 31, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. This is a bill in equity brought by the executor of the will of Henry J. Lord to determine the ownership of five bearer coupon bonds now in the possession of the respondent. After a hearing in the superior court on bill, answer and proof a decree was entered granting the relief prayed for and the cause is before us on the respondent's appeal from that decree.

In October 1953 the testator, a childless widower, bought five bearer coupon bonds for the respondent and her sister Lillian who were his nieces by marriage. At that time he

was a retired mill worker sixty-five years old, and he had a room in a tenement occupied by respondent and her husband who was a blood nephew of the testator. Shortly after the bonds were purchased they were mailed to the respondent and her sister Lillian. The testator opened the envelope and that night he came out of his bedroom with the bonds in his hands and said to respondent "Here are the bonds I bought for you and the kid." He referred to Lillian as the "kid." He then handed the bonds to respondent who took them and thanked him for them. Following this there was a discussion as to whether the bonds bore the proper number of coupons, and it was their understanding that they might have to be exchanged for bonds with a full set of coupons for the period of ten years. The testator said that all he wanted was the interest for the rest of his life. He had a safe deposit box and the respondent's name was on it, although she never had a key and did not want one since, as she said, the testator was retired and could do the necessary errands for her.

After the above conversation about the coupons respondent handed the bonds to the testator and told him to put them in the safe deposit box. About a year later while the testator was living with his sister, he made a will, drawn by the executor, in which he gave these bonds to the executor in trust for Lillian. The will was introduced as an exhibit in which he referred to "the securities * * * which I now own." After the testator died respondent obtained possession of the bonds.

In a colloquy between court and counsel at the end of the hearing the complainant took the position that there was not a sufficient delivery and the trial justice indicated that that was pretty nearly what he had in mind. There is no question but what the bonds were bought for the nieces. They were sent to them and there is an exhibit which is a confirmation of the sale of the bonds bearing the names of the nieces. The testator gave a check for $50 to cover

the accrued interest. There was a rebate of $15 and the check for it was sent in the mail to the nieces who endorsed it and gave it to the testator.

There seems to have been no question as to credibility in the trial justice's mind because in his rescript he said: "Giving to all the evidence reasonable inferences most favorable to the respondent and applying the law, we are unable to find in her favor on the matter of a legal completed gift * * *." Before they obtained counsel respondent and her husband had had a conference with complainant concerning this matter. The complainant admitted that what they told him then was substantially the same as their testimony. Therefore, it is clear that the sole question is whether or not there was a delivery sufficient to satisfy the law of gifts.

Apparently the trial justice's opinion that there was no delivery was based on the fact that the bonds were in respondent's possession for so short a time and that the donor had them under his control to the extent of being able to dispose of them had he wished so to do, since they were bearer bonds. We see no legal significance in the fact that respondent handed the bonds back to the testator for safekeeping that night rather than a few days or a few weeks later. Her action in taking them and then giving them to him for safekeeping were acts of dominion over the bonds. The testimony shows a complete delivery to respondent and the intention on the part of the testator to divest himself of the title to the principal. All that he was interested in was the interest.

It seems natural that respondent should give the bonds to the testator for safekeeping in the safe deposit box to which he alone had the key although she had the right to have a key. Both she and her husband worked and testator's time was his own, and since he retained the coupons for himself, he would be the one to take them off. It appears inferentially that new bonds with the full quota

of coupons were substituted for the original bonds but neither court nor counsel has made any reference to that fact. We view this exchange as having been made pursuant to an understanding between the donor and the donee to which we have referred above. As he was interested only in the coupons, he was acting for himself as to them and for the nieces as to the principal. Of course, the donor could have given good title to these bonds because they were bearer bonds, but that does not mean he had a right so to do and he never sold them. The point was made that in his will he referred to these bonds as "securities * * * which I now own." This was clearly a self-serving statement and suggests that he was trying to take back the bonds which he knew he had given away. The executor, who acted as his own attorney, claims that there was some suggestion that the bonds were bought in the names of the nieces for tax purposes and although the questions suggested this, the answers do not and we find no substance to that claim.

It is generally recognized that the retention by the donor of the right to collect interest on a chose in action does not of itself destroy the gift if it is otherwise complete, yet if other factors bearing against a gift are of sufficient weight, such reservation may well be the deciding argument to defeat the gift. 24 Am. Jur., Gifts, §29, p. 746. The cases are collected in several notes in A.L.R. referred to in the notes to the text. They seem to turn upon the retention of control by the donor. Most of them recognize that if the donor actually makes a complete delivery of the gift to the donee the fact that the donee lets the donor have it back for the purpose of collecting the interest does not destroy the previously completed gift.

Counsel for the parties seem not to have found the article on gifts to which we have referred, but we have made a rather exhaustive independent search of the authorities on this subject. The case most favorable to complainant that we have found is *Buswell v. Fuller,* 156 Mass. 309, 310,

where a father who held his son's note handed it to his daughter-in-law saying: "I will give it to you." He also said he wanted the interest for the rest of his life. The court stated at page 312: "If, when he handed her the note, she supposed he was going to let her keep it, he immediately corrected her misunderstanding by telling her that he was to retain it so that he could indorse the interest on it. There is nothing to indicate that there were two separate transactions, one an absolute giving up of the note and a relinquishment of all claim under it, and the other a new arrangement, without consideration, that interest should be paid during his life, and that the note should be given back to him by the defendant, as evidence of her voluntary promise to pay interest."

In that case the donor immediately asked for the return of the note whereas here the donee of her own motion returned the gift to the donor for safekeeping. There is nothing to suggest that he would not have been perfectly satisfied to have the respondent keep the bonds and clip the coupons for him and we have already commented on the reasons why she handed them back to him.

The respondent recognizes that she has the burden of proving the gift by clear and convincing evidence and that she also must satisfy us that the trial justice was clearly wrong. These are two steep hills for the appellant to climb but we are of the opinion that she has succeeded. She did this with positive testimony from witnesses who were uncontradicted and unimpeached either by direct testimony or by circumstantial evidence. Triers of facts cannot disregard such testimony. *Gorman* v. *Hand Brewing Co.*, 28 R. I. 180; *Walsh-Kaiser Co.* v. *Della Morte*, 76 R. I. 325.

The respondent's appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to enter a decree denying and dismissing the bill of complaint.

*G. Chandler Beals, pro se, Coleman B. Zimmerman,* for complainant.

*Fergus J. McOsker,* for respondent.