DECISION
This is an administrative appeal from a September 24, 1993 decision of the Department of Human Services (DHS) denying Jessie F. Zona (plaintiff) medical assistance benefits. Jurisdiction in this Court is pursuant to G.L. 1956 (1993 Reenactment) §42-35-15.
FACTS AND TRAVEL
The plaintiff was admitted to a long-term nursing facility in February 1993. On March 5, 1993, an application for medical assistance benefits with DHS was submitted on plaintiff's behalf by her adult children. A written notice was issued by a DHS agency representative on August 11, 1993, advising the plaintiff that her application for medical assistance benefits had been denied. The agency deemed the plaintiffs assets to be in excess of the $4,000 medically needy assistance limit set by DHS policy. (See, DHS Policy Manual § 0324.)[1]
During the application process, it was discovered that four separate certificates of deposit (CDs) that listed the appellant as joint account holder, had recently been redeemed. Each of the CDs was issued in the name of the appellant and one of her adult children.
Three of the CDs were established on October 30, 1985. Each CD had a beginning balance of $24,000. These CDs were redeemed by the adult children on February 1, 1993, approximately one month before the plaintiff applied for public assistance. The redemption value of these accounts was $69,555.57. The fourth CD was established on March 2, 1988, with an opening balance of $10,000. This fourth certificate, with a redemption amount of $9,694.27, was redeemed by the adult children on August 17, 1992.
The funds placed on deposit derived from the estate of the plaintiffs decedent husband and from the sale of the plaintiffs marital domicile. The adult children testified that the plaintiffs late husband's will provided that all funds formerly held by him were to be disbursed to the adult children. Apparently, no provisions were made for monies to be paid to the plaintiff herself. It is unclear how title was held to the marital property prior to the sale in the mid-1980s. The adult children contend that it was the intent of the plaintiff and her decedent husband that all proceeds from the sale were to be given to them.
The adult children of the plaintiff were offered the opportunity by DHS to rebut the presumption that the plaintiff owned the funds in the subject CDs. The plaintiff suffers from dementia and was not capable of rebutting the presumption on her own. The appropriate rebuttal documents were sent on her behalf by the adult children to DHS. The agency issued a notice of denial of benefits, ruling that the CDs were available to the plaintiff for her use in the cost of care. DHS decided that the monies were removed from the subject accounts solely to make the plaintiff appear eligible to receive medical assistance benefits.
On October 22, 1993, the adult children timely filed an appeal. During the administrative hearing on August 26, 1993, the adult children argued that the monies were withdrawn from the CDs as not to render the appellant eligible for medical assistance benefits, but rather to give the funds to the true owners, themselves. The adult children claimed that the history of the CDs clearly demonstrates that they were the true owners.
In testifying before the agency's hearing officer, the adult children maintained that an agreement was made with the plaintiff so that the principal in these accounts would belong to them. They explained that a separate agreement was made amongst themselves, that all interest income earned by the CDs would belong to the plaintiff so that she could supplement her social security income. The facts show that the plaintiff duly paid the income tax on this interest income.
The testimony and evidence provided to DHS demonstrated that the only account activity involving these funds was by the adult children. Through the years, only the adult children ever invaded the principal of the CDs. During the almost eight-year existence of these accounts, the plaintiff never touched the principal. It was further noted that the passbooks for these accounts were always in the possession of the adult children except for when one of the adult children used a CD for collateral on a loan.
On September 24, 1993, the agency issued its decision. The hearing officer concluded that, based upon the totality of the circumstances, some if not all of the monies originally placed on deposit were monies that were the sole property of the plaintiff. (Decision of the Department of Human Services, September 24, 1993, p. 17.) The hearing officer decided that even if the will of the plaintiff's decedent husband made no provision for her, she nonetheless retained a legal right to claim her spousal share of the estate. Id. Furthermore, the hearing officer believed that when the marital home was sold, she would have retained an interest in some if not all of these proceeds. Id.
The hearing officer decided that since the funds derived intoto or in part from the plaintiff, she exercised control over those funds at the time they were placed on deposit. Id. at 18. Additionally, because the interest earned by those funds was diverted for the benefit of the plaintiff, the hearing officer determined it was clear that the plaintiff continued to exercise control and access over the funds through the years. Id. Moreover, since the plaintiff was listed as a joint owner of the funds in each of the three CDs, the hearing officer concluded that the plaintiff retained complete and unfettered access to the monies held on deposit in the CDs. Id.
With respect to the fourth CD, the hearing officer held that the testimony and evidence presented did not support a reasonable and logical conclusion that those funds derived solely from the plaintiff, even though her name was placed as the co-owner of the CD. Id. at 17. The hearing officer found that the monies in this fourth account to be the funds of the adult children. Id. at 18.
The plaintiff filed the instant appeal.
STANDARD OF REVIEW
The scope of this court's review of decisions of administrative agencies, including decisions of the Department of Human Services, is defined by R.I. Gen. Laws 1956, § 42-35-15
as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) in violation of constitutional or statutory provisions;
 (2) in excess of the statutory authority of the agency;
 (3) made upon unlawful procedure;
 (4) affected by other error of law;
 (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or
 (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.
Pursuant to § 42-35-15, a reviewing court cannot substitute its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact. Costa v. Registrar of MotorVehicles, 543 A.2d 1307, 1309 (R.I. 1988). An administrative decision will be reversed only if it is clearly erroneous in light of the reliable, probative and substantial evidence contained in the record. Id. If there is competent evidentiary support for the agency's determination, the determination will not be disturbed. Guarino v. Department of Social Welfare,122 R.I. 583, 410 A.2d 425 (1980).
DHS REGULATIONS
Title XIX of the federal Social Security Act sets forth the provisions of the medical assistance program. See 42 U.S.C. § 1396et. seq. "The purpose of the Medicaid Program is to furnish medical assistance to disabled individuals who are without funding to meet the necessary medical costs." Social Security Act 1901, as amended 42 U.S.C. § 1396. In accordance with this act, DHS administers the medicaid program for the State of Rhode Island. Pursuant to R.I. Gen. Laws § 40-8-3(e), DHS shall establish income and resource rules, regulations, and limits in accordance with Title XIX of the federal Social Security Act [42 U.S.C. § 1396 et. seq. as applicable to the medically needy only applicants and recipients. The DHS Policy Manual establishes an eligibility limit of $4,000 for financial resources in order to be eligible for medical assistance benefits in the State of Rhode Island. DHS Policy Manual, § 0324.[2]
A "resource" is defined by DHS policy as either real or personal property which the applicant/recipient can use to provide for his or her basic needs for food, clothing, shelter or medical care. DHS Policy Manual § 0366.[3] The DHS policy stipulates:
 In order to be countable in the determination of Medical Assistance Eligibility, a resource must be available to the client. The client must be able to use the resource to provide food, shelter, clothing, or convert it to a form which it can be used to meet needs.
 (1) A resource is considered to be available both when actually available, and when the client has the legal ability to make such sum available for support and maintenance.
 (2) Resources are not available when a legal impediment exists which preclude the client from making the resources available for support, maintenance, and medical care.
 DHS Policy Manual, § 0366.[4]
The DHS's definition of "resource" encompasses both "tangible personal property" and "intangible personal property." The DHS policy states that "intangible personal property" includes such rights as stocks, bonds, savings accounts, checking accounts, certificates of deposit, cash and promissory notes. DHS Policy Manual § 0366.[5]
In its treatment of "intangible personal property," DHS addresses the issue of joint bank accounts. Pursuant to DHS policy, whenever the applicant is a joint account holder who has unrestricted access to the funds in the account, all of the funds in the account are presumed to be the resources of the applicant. The DHS Policy Manual § 0324(2).[6] The determination of accessibility does not fall upon the individual but depends upon the legal structure of the account. Where the applicant is a joint holder of a bank account and is legally able to withdraw funds from that account, (s)he is considered to have unrestricted access to the funds. DHS Policy Manual § 324(6).[7]
The DHS does offer the applicant the opportunity to submit evidence in rebuttal of the presumption that the funds in a joint account are resources of the applicant. A successful rebuttal will result in finding that the funds (or a portion of the funds) in the joint account are not owned by the applicant and, therefore, are not the resources of the applicant. The DHS Policy Manual § 0324(2).[8] Pursuant to § 0324(7)[9] of the Policy Manual, entitled "Rebuttal of Presumption of Ownership of a Joint Account":
 "There may be a situation where an individual has unrestricted access to funds in a joint bank account but does not consider himself/herself an owner of the funds (either fully or partially.) For example, the individual may allege that all of the funds in the account are deposited by the other account holder(s). The individual may declare that (s)he has never withdrawn funds from the account or, if withdrawals were made, the funds were used for or given to the other account holder(s); ie, the applicant acts as an agent for the other account holder(s)."
Pursuant to DHS Policy Manual § 0324,[10] entitled, "Evidence Necessary for a Successful Rebuttal," all of the following are required: I. an AP-92 statement essentially detailing the history and purpose of the account; II. an AP-92A corroborating statement form the other account holder or beneficiary; III. evidence of a new account in the applicant's name and containing the applicant's fund or deletion of the applicant's name from the subject account; IV. ". . . all available documentary evidence to support the statements in the AP-92 and AP-92A(s)." If the applicant is incompetent, it is unnecessary to obtain a corroborating statement from that individual.
THE SUBJECT ACCOUNTS
Applying the agency regulations to the facts herein, the hearing officer concluded that the plaintiff did not successfully rebut the presumption of ownership of the joint accounts. The hearing officer decided that the plaintiff had unrestricted access to the funds.
The adult children, appealing on behalf of the plaintiff, contend they have successfully rebutted the presumption of ownership of the CDs. They claim that the plaintiff clearly divested herself of any ownership or control she may have had in the monies of the accounts by creating a gift to the adult children. The Rhode Island Supreme Court has held that "a claimant seeking to establish an absolute intervivos gift of a bank account must establish by clear and satisfactory evidence that the gift was truly executed, and that the donor intended it to take effect presently and immediately." Slepkow v. Robinson,113 R.I. 550, 553, 324 A.2d 321, 324 (1976). "A gift requires a showing that the donor intended, in praesenti, to divest himself/herself of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership and control in the claimant." Wyatt v. Moran, 81 R.I. 399, 403,103 A.2d 801, 803 (1954).
The evidence of record supports the conclusion that the CDs were gifted to the adult children. The record indicates that the intent of the parties, from the outset, was that the adult children and not the plaintiff were the true owners of the funds on deposit. (Transcript at 8 and 23.) The evidence also indicates that the intent of the plaintiff s decedent husband in his will was that the funds from the marital property would be distributed equally amongst his three children. (Tr. at 10.) Furthermore, the adult children testified on the record that, "The intention from the beginning was the principal was ours to do with as we saw fit." (Tr. at 23.)
There was substantial evidence presented to the hearing officer indicating that the plaintiff intended the gift to take effect presently and immediately. "The rationality of an agency's decision must encompass its fact-findings, in its interpretation of the pertinent law, and its application of the law to the facts as found." Arrow Transportation Company v. United States, 300 F. Supp. 813 (D.C.R.I. 1969). The passbooks to the CD accounts always remained in the possession of the adult children and not the plaintiff. (Co-holders corroborative statement re: Joint Account, Attachment I.) In Sullivan v. Cartwright, the Rhode Island Supreme Court determined that there was enough evidence to support the finding that the deceased mother intended to make a gift of a bank deposit to her daughter when she had her daughter's name placed upon the bank book and then gave the bank book to her daughter. 167 A. 132 (R.I. 1933). Moreover, the hearing officer had before him the fact that she placed equal amounts of money ($24,000) into the three CDs and listed each adult child as a joint account holder on one of the CDs.
Further, the plaintiff never used the principal of these accounts over the life of the CDs. All account activity involved the unilateral actions of the adult children alone. (Tr. at 12 and 23.) In Green v. Green, a Rhode Island Supreme Court case involving trust accounts, the court found there was evidence that the decedent specifically intended to dispose of his property through totten trusts. 559 A.2d 1047 (R.I. 1989). One of the factors demonstrating the decedent's intent to create the trust, was that throughout the years decedent's activity on the trust accounts was minimal. Id at 1049. The record demonstrates that all dominion and control exercised over these CDs was by the adult children, that the adult children did invade the principal of these accounts and that they believed it was their right to do so. (Decision at 14.) The adult children testified on the record:
 "Those funds were not used or available to Jessie (i.e. the plaintiff) and in fact over the last four or five or six years any change in those numbers were was instigated by the children in this case. She on no occasion that I'm aware of used those funds. We did. So how the agency concludes that she has access to them and used them on a regular basis uh that wasn't said but it was implied that's beyond me because there is no evidence to suggest other than the interest and yes the interest was being put into her checking account and being used by her. But the principal amounts were being manipulated and by us and we were told uh uh we sort legal advice and were told those funds ours and to be used in any way, shape or form we wanted to use them, and did." [sic]
The plaintiff did receive the interest income from these CDs at the direction of the adult children. (Tr. at 8) Generally, the retention by the donor of the right to collect interest on a chose in action does not of itself destroy the gift if it is otherwise complete, yet if other factors bearing against a gift are of sufficient weight, such reservation may well be the deciding argument to defeat the gift. Beals v. Lord,134 A.2d 127, 130 (R.I. 1957) (quoting 24 Am.Jur., Gifts, § 29, at 746.) "If the donor actually makes a complete delivery of a chose in action to donee, the fact that the donee lets the donor have it back for purpose of collecting interest does not destroy the previously completed gift." Beals at 130. The plaintiffs receiving the interest income alone is here insufficient to establish dominion and control over these CDs.
Furthermore with respect to the fourth account, the hearing officer decided that the testimony and evidence presented did not clearly support a reasonable and logical conclusion that these funds derived solely from the plaintiff, even though her name was placed as co-owner of these funds. (Decision at 17.) The hearing officer concluded that based on the evidence, the monies held on deposit in this fourth account were not those of the plaintiff but rather the funds of her adult children. (Id at 18.) The hearing officer failed sufficiently to explain on the record his reasoning regarding his differing conclusions as to the fourth account and the other three CDs. The record is devoid of any material distinctions between the fourth CD and the other funds, besides the value of the CDs and the time period that the CDs were established and subsequently redeemed. The fourth CD was established with an opening balance of $10,000 on March 2, 1988, while the other three accounts were opened on October 30, 1985, each with a beginning value of $24,000. The former was redeemed by the adult children on August 17, 1992, in the amount of $9,694.27 and the latter on February 1, 1993, with a redemption value of $69,555.57. If the hearing officer found that the plaintiff had rebutted the presumption of ownership as to fourth CD, it is unclear from the record why he found that the plaintiff had not rebutted the presumption of ownership in regard to the other three accounts.
After a review of the entire record, this Court finds the decision of the hearing officer is clearly erroneous in view of the competent evidence contained on the whole record and is affected by error of law. The agency's finding that pursuant to DHS Policy Manual § 0324 the plaintiff did not successfully rebut the legal presumption of unrestricted access to the subject funds is not supported by the substantial and reliable evidence of record. Accordingly, the agency decision finding that these three CDs were available resources to the plaintiff constitutes error of law and is hereby reversed.
ATTORNEY'S FEES
The plaintiff requests attorney's fees pursuant to the Equal Access to Justice Act, G.L. 1956 (1993 Reenactment) §42-92-1, et. seq. The petitioner is entitled to recover reasonable attorney's fees if deemed to be the prevailing party, unless the position of the agency is substantially justified. § 42-92-3. In meeting the substantial justification test, the agency has the burden to show that its position was at least clearly reasonable, well founded in law and fact, solid though not necessarily correct. Taft v. Pare, 536 A.2d 888 (R.I. 1993).
Although this Court finds that the agency decision was erroneous, and hereby reverses the agency's decision, this Court does not find that the agency's decision was unreasonable. The substantially justified agency's position does not warrant an award of fees under the Equal Access to Justice Act.
With respect to all of the above, counsel shall submit the appropriate order for entry.
[1] Renumbered DHS Policy Manual § 0354.
[2] Renumbered § 0354.
[3] Revised 6/94. Renumbered § 0354.10.
[4] Revised 6/94. Renumbered § 0354.30.
[5] Renumbered § 0354.
[6] Revised 6/94. Renumbered § 0356.15.10.10.
[7] Renumbered § 0356.15.10.18.
[8] Revised 6/94. Renumbered § 0356.15.10.10.
[9] Revised 6/94. Renumbered § 0356.15.10.20.
[10] Revised 6/94. Renumbered § 0356.15.10.24.