DECISION
This probate appeal was tried de novo to the Court, without a jury, and relates to a dispute over the ownership and possession of a certain diamond ring. The ring currently is in the possession and control of Defendant Ruth McCarthy (the "Defendant"). The Plaintiff, Barbara Ramirez Johnson (the "Plaintiff"), maintains that she owns the ring, and that by virtue of a written agreement with Defendant's deceased husband, Raymond D. McCarthy (Mr. McCarthy), she was entitled to possession of the ring upon his death. The claim filed in the probate court reflects this contention. The Defendant, as Executrix of Mr. McCarthy's Estate, contends that she inherited the ring in her individual capacity. The Executrix denied the initial claim made by Plaintiff, and the probate court affirmed that denial. This appeal followed. Jurisdiction is pursuant to G.L. 1956 § 33-23-1. *Page 2 
 I Facts and Travel
On July 18, 1981, Plaintiff and Mr. McCarthy entered into a signed agreement, whereby Mr. McCarthy loaned Plaintiff $3300. The loan was secured in part by a diamond ring owned by Plaintiff. Attached to the agreement was an appraisal valuing the ring at $3900. Initially, the ring was to be placed in the custody of an attorney for the period of one year. Thereafter, "[i]f $3,300 is not paid in full by July 18, 1982, the ring will be turned over to Raymond D. McCarthy until such time as the notes are paid off in full." Id. Thus, Plaintiff was obligated to repay the loan (although payment terms were not set forth in the agreement). Paragraph four of the agreement provided:
 If, for any reason, Mr. Raymond McCarthy should die between this date and July 18, 1982, or after that date and when he is in possession of the ring, it is understood that the ring shall be returned to Barbara A. Ramirez, this note and/or any balance remaining shall be considered paid in full and the ring returned to Barbara A. Ramirez. Id.
On February 20, 2007, Mr. McCarthy died suddenly from a myocardial infarction.
In his last will and testament, Mr. McCarthy named his wife, Defendant Ruth McCarthy, as his Executrix, and he devised and bequeathed to his wife all of his tangible property, as well as "[a]ll the rest, residue and remainder of my property, real and personal, and property over which I possess or may possess a power of appointment at my decease. . . ." (Last Will and Testament of Raymond D. McCarthy, dated February 1, 1991, at 2.) Thereafter, Defendant filed a Petition to Probate the will in the Probate Court of the City of Pawtucket.
On November 30, 2007, Plaintiff filed a Statement of Claim against the Estate seeking the return of the diamond ring pursuant to paragraph four of the agreement between her and Mr. McCarthy. On December 11, 2007, Defendant, in her Capacity as Executrix of the Estate, *Page 3 
denied the claim. The Plaintiff timely appealed the denial to the Probate Court for the City of Pawtucket. The probate court heard the appeal on January 16, 2008. In a subsequent written decision, the probate court affirmed the denial of the claim and denied the appeal.
In her decision, the probate judge found that paragraph four of the agreement was testamentary in nature. She then found that the provision was invalid and could not be enforced because it failed to comply with the statute of wills, more particularly the witness and acknowledgement requirements that are contained in G.L. 1956 § 33-5-5. The Plaintiff timely appealed the probate court's decision to this Court for a trial de novo.
At trial, Plaintiff testified that she and Mr. McCarthy had been romantically involved in the past, and were engaged to be married at one point. They remained friends after they broke up. It was sometime thereafter that Plaintiff asked Mr. McCarthy for a loan in the amount of $3300. As part of the agreement, Plaintiff pledged, as collateral, her diamond ring and gave possession of the ring first to a named attorney, and then to Mr. McCarthy. She testified that she made numerous attempts to make payments on the loan, but that Mr. McCarthy sometimes refused to accept the payments, stating that she needed the money to raise her three sons. The Plaintiff further testified that it was her understanding that the ring would be returned upon repayment of the loan, or upon Mr. McCarthy's death, whichever came first. Between July 18, 1981, and February 20, 2007, Plaintiff apparently only made some payments on the loan. Neither the amount of the payments, nor the present outstanding balance of the loan, was made part of the record.
The Defendant testified that she currently is in possession of the ring. It is not clear whether her claim to current possession is as the Executrix of her deceased husband's estate, or on account of a bequest made in her husband's will. The Defendant further testified that she was *Page 4 
aware of the transaction between her husband of twenty years and Plaintiff. She also stated that she understood that the return of the ring was dependent upon Plaintiff's satisfaction of the loan. At the conclusion of the trial, the Court invited the parties to submit memoranda of law. Having heard the testimony and reviewed the evidence and memoranda, the Court now is prepared to issue its Decision in this matter.
 II Analysis
The Plaintiff asserts that the agreement at issue did not constitute a gift — testamentary or otherwise. Rather, she claims that the ring simply was pledged as security for the loan. She maintains that the agreement is a valid, enforceable contract. The Defendant contends that paragraph four of the agreement either constituted an invalid testamentary gift, as decided by the probate judge, or that the contract fails for lack of consideration on the part of Plaintiff. Because the probate court found paragraph four to be testamentary in nature, it did not address the issue of consideration.
In the instant matter, the probate judge found paragraph four of the agreement between Plaintiff and Mr. McCarthy to be testamentary in nature. She then concluded that the transfer of the ring was a testamentary gift and, therefore, must fail because Mr. McCarthy did not comply with the signature and authentication provisions of § 33-5-5.[1] The issue that this Court must determine is the legal nature of the document signed by Mr. McCarthy and Plaintiff; namely, whether it constituted an inter vivos gift, a testamentary gift, or a valid, enforceable contract. *Page 5 
In Wyatt v. Moran, 81 R.I. 399, 103 A.2d 801 (1954) our Supreme Court examined whether a joint bank account with right of survivorship constituted an inter vivos gift where the decedent maintained control of the account. It is axiomatic "that a claimant has the burden of establishing a gift inter vivos by clear and satisfactory evidence" of donative intent. Id.
at 403 103 A.2d at 803. Accordingly, the claimant
 must establish by such degree of proof that the donor intended, in praesenti, to divest himself [or herself] of the exclusive ownership and control over the subject matter of the alleged gift and to vest such ownership and control jointly in the claimant. In other words, such gift must be fully executed and go into immediate and present effect. If the transaction in question was to take effect only after the death of the donor, then under the well-settled law it is a testamentary disposition and not a gift inter vivos. Id. (internal quotations omitted).
In the instant matter, Mr. McCarthy clearly intended paragraph four, relative to the forgiveness of the loan and the return of the ring to Plaintiff was to go into effect only upon his death. It is undisputed that he maintained exclusive possession of the ring until his death as collateral security for the loan. Although Plaintiff testified that Mr. McCarthy refused to accept her offers of payment on the loan, it is telling that he did not return the ring on those occasions; rather, he continued to maintain exclusive control over the ring. Consequently, the Court holds that Mr. McCarthy did not intend the return of the ring or the debt forgiveness to be aninter vivos gift.
A gift that is intended to take effect only after the death of the donor is a testamentary disposition; accordingly, such a disposition must conform to the appropriate rules in order to be effective.See Section 33-5-5. However, "[t]he fact that testamentary verbiage or terms indicating a gift were used would not prevent the instrument from becoming a binding contract if the parties so intended." Church of Jesus Christ of Latter Day Saints v.Scarborough, 189 F.2d 800, 801 (10th Cir. 1951) *Page 6 
(citing Baker v. Syfritt, 125 N.W. 998, 1003 (Iowa 1910) ("A contract is none the less a contract because it contains provisions which are testamentary in character, nor is a will any less a will, if properly executed, because it embodies contractual features")). "Whether [an] instrument is testamentary or contractual is to be decided on a fair consideration of every provision of the instrument and in the light of all pertinent facts in evidence, which, directly or by reasonable inference, tend to establish its true character."Dutra v. Davis, 70 R.I. 318, 323, 38 A.2d 471, 473 (1944).
Recently, our Supreme Court stated that "[c]ontracts for testamentary disposition are allowed to stand only when established by clear proof." In Filippi v. Filippi, 818 A.2d 608, 623
(R.I. 2003). Accordingly, "to prove the existence of a contract, [the party] must prove each element of a valid contract by clear and convincing evidence" Id. The Court then succinctly discussed the elements of a contract. It declared that
 [e]very contract must be formed though mutual assent or, in other words, an intention to promise or be bound through offer and acceptance. [I]t is a party's objective intent that will be considered as creating either an offer or acceptance. Objective intent is determined by the external interpretation of the party's or parties intent as manifested by action. In addition to mutual assent, a bilateral contract requires mutuality of obligation, which is achieved when both parties are bound legally by the making of reciprocal promises. Mutuality of obligation fulfills the consideration requirement of contracts. To determine consideration, the Restatement (Second) of Contracts § 71 (1981) employs a bargained-for exchange test. Under this test, something is bargained-for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. Id. at 623-24 (internal citations and quotations omitted).
In Dutra, the issue was whether an instrument, executed by a decedent and signed by two witnesses, constituted a will.[2] The instrument, entitled "Memorandum," was drafted by an *Page 7 
attorney and reflected an oral agreement that plaintiff take care of the decedent for the rest of her life, and pay for funeral expenses, in return for the forgiveness of a mortgage upon decedent's death. Our Supreme Court held that "[t]he title, form and language of the instrument is not that of a will but rather that of a contract."Id. at 324, 38 A.2d at 473. In addition to describing the instrument, the Court also took into consideration inconsistent conduct of both plaintiff, who represented to the probate court that the decedent died intestate, and the Administrator of the estate, who along with plaintiff, failed to disclose to the attorney who held the instrument that it was decedent's last will and testament.Id. The Court then held that the instrument was not a will.Dutra, at 324, 38 A.2d at 474.
In the instant matter, the instrument at issue is referred to as an agreement. The agreement embodies mutual promises; therefore, it is a bilateral contract. The mutual consideration is Mr. McCarthy's promise to extend a loan to Plaintiff in return for her promise to repay. Consequently, it constitutes a valid and enforceable bilateral contract in the nature of a demand instrument.[3] It is undisputed that Mr. McCarthy never made any demand for payment; indeed, his actions were quite the opposite, he rejected Plaintiff's attempts to make payments, telling her that she needed the money for her children.
The cancellation of a loan triggered by an individual's death is a permissible contract term:
 The essential distinction between a contractual obligation and a testamentary disposition is that the contract contemplates performance in part at least, during the lifetime, and vests some quantum of present interest in the other party. So, although an agreement involves or effectuates a disposition of property belonging to a party thereto, it is valid as a contract and not as a will where it contemplates performance at least in part during his *Page 8 
lifetime or vests a present interest in the other party. Bergman v. Ornbaun, 92 P.2d 654, 655
(Cal. App. 2d 1939).
In the instant matter, the clear and unequivocal terms of the contract demonstrate that it was the intent of the parties that should Mr. McCarthy die before the loan is paid off, then the loan balance would be cancelled and forgiven. Accordingly, at the death of Mr. McCarthy, the contract required the loan to be forgiven and to be considered as paid. See R.F. Chase, Validity andEffect of Agreement that Debt or Legal Obligation Contemporaneouslyor Subsequently Incurred Shall be Canceled by Death ofCreditor or Obligee, 11 A.L.R.3d 1427 (Originally published in 1967). Since the Court finds that the contract was valid and enforceable, the debt no longer legally exists; therefore, the ring no longer can be held as collateral. Thus, in accordance with the terms of the contract, Mr. McCarthy's estate must return the ring to Plaintiff, free and clear of any debt.
 Conclusion
For the foregoing reasons, the Court concludes that the probate judge erroneously found the agreement between Plaintiff and Mr. McCarthy to be testamentary in nature and must be reversed.[4]
Instead, the Court holds that the agreement between Mr. McCarthy and Plaintiff constitutes a valid and enforceable contract. Paragraph four mandates cancellation of the loan and the return of the ring to Plaintiff should Mr. McCarthy die before the loan is satisfied. *Page 9 
Because Mr. McCarthy is now deceased, the Court orders his estate to return the ring free and clear of any security interest to Plaintiff forthwith.
[1] Section 33-5-5 provides in pertinent part:
 No will shall be valid . . . unless it shall be in writing and signed by the testator, or by some other person for him or her in his or her presence and by his or her express direction; and this signature shall be made or acknowledged by the testator in the presence of two (2) or more witnesses present at the same time, and the witnesses shall attest and shall subscribe the will in the presence of the testator, but no form of attestation shall be necessary, and no other publication shall be necessary.
[2] This Court observes that the signatory requirements of G.L. 1956 § 33-5-5 were satisfied in Dutra v. Davis, 70 R.I. 318,38 A.2d 471 (1944).
[3] A demand instrument is defined as: "An instrument payable on demand at sight, or on presentation, as opposed to an instrument that is payable at a set future date." Black's Law Dictionary 495 (9th ed. 2009).
[4] The Court observes that even if paragraph four of the agreement had been testamentary in nature, which it is not, the ring would not be a personal asset of the estate; rather, it would constitute a perfected security interest in the ring. Section 6A-9-313 of the General Laws provides in pertinent part: "a secured party may perfect a security interest in tangible negotiable documents, goods, instruments, money, or tangible chattel paper by taking possession of the collateral." Section 6A-9-313(a). Furthermore, "[i]f perfection of a security interest depends upon possession of the collateral by a secured party, perfection occurs no earlier than the time the secured party takes possession and continues only while the secured party retains possession." Section 6A-9-313(d). Because Mr. McCarthy took possession of the ring, he perfected his security interest in the ring. Thus, even if the agreement had failed as an invalid testamentary disposition, which it does not, the ring only would constitute collateral for an account receivable due and owing to the Estate.